JOHN WRIGHT, Respondent,

*vs.*

JAMES O. EATON, Appellant.

APPEAL FROM THE DANE CIRCUIT COURT.

A party invoking the aid of a court of equity to restain, enjoin or set aside a judgment at law, must establish:

1. That the judgment was obtained when no cause of action or claim existed:

2. That the party obtained it through fraud or imposition upon the court or party.

3. That the party intended to defend the suit and was prevented by fraud of the opposite party, or accident or mistake from doing it, and in general that he had used reasonable and ordinary diligence to defend.

A court of equity will not interfere to set aside a judgment at law for mere irregularity; nor unless it clearly appears from the pleadings and proofs that the judgment is contrary to equity and good conscience.

An agent who wrongfully obtains money from another, cannot defend his liability to respond on the ground that he acted as agent, even though he may have paid over to his principal the money thus obtained.

Baldwin vs, Marygold, and other cases referred to and approved.

This was an action commenced by the respondent, against the appellant in the circuit court of Dane county, to vacate and enjoin a certain judgment rendered by a justice of the peace of Columbia county, in favor of the said Eaton against the said Wright.

The complaint alleges that on or about the 15th day of January, 1857, the plaintiff, Wright, was served with a summons issued by H. R. Pettibone, Esq., a justice of the peace of Columbia county, whereby he was required to appear before said justice at his office in Portage city, in said county, on the 22d day of January, then instant, and answer to the

said Eaton in a plea of trespass on the case upon promises to his damage of one hundred dollars or under.

" And the plaintiff further shows that he immediately wrote to Dixon & Prentiss, a firm of attorneys residing at Portage city aforesaid, informing them of the commencement of said suit, and requested them to appear for him on the trial thereof as his attorney.

" And the plaintiff further shows that within a day or two after the commencement of said suit as aforesaid, he left the state, and was absent therefrom until the 10th day of February last, and that he did not hear anything from Dixon & Prentiss or either of them, and he fully believed that they had attended to said suit for him, until about the 25th day of February, when he heard that the said Eaton had obtained a judgment against him for the sum of $95 50 damage, and eleven dollars and eleven cents costs, by default; and that this plaintiff was not guilty of any negligence, but attended and made the necessary arrangements to have the same defended as heretofore stated.

" And the plaintiff further shows that said judgment was rendered against him on the 29th day of January last, and he was not informed, and had no knowledge thereof until the 25th day of February, and until after the time to appeal from said judgment had expired, and the plaintiff is wholly remediless at law, and can only have relief against said judgment in equity.

" And the plaintiff further says that said judgment was obtained against him by fraud, and without any evidence, and without any cause or claim whatever existing in favor of the said Eaton, against him the said plaintiff, and that as it now appears, the said Dixon & Prentiss were employed as the attorneys of the said Eaton, and as the plaintiff is informed, said Dixon, one of said firm, after the receipt of said letter from the plaintiff, called upon the firm of Pulling & Doty,

attorneys at law, or one of them, and gave the plaintiff's letter to them, and stated to them that when the case came on, and before they proceeded any further, he or Prentiss would inform them, so that they might appear for this plaintiff, and that Pulling & Doty, relying upon the promise and representation of said Dixon, took no further steps to ascertain when the trial would come on, and that Mr. Prentiss on the adjourned day to-wit; the 29th day of January, aforesaid, without any notice to the said Pulling and Doty, or either of them, as Mr. Dixon had agreed previously, they should have, went before said justice without the knowledge of said plaintiff or his attorneys, which Mr. Dixon had employed as hereinbefore stated, and took judgment against the plaintiff for the sum hereinbefore stated; but the plaintiff expressly charges and alleges upon the information of said Prentiss and justice that no witness was sworn on said trial, nor was any evidence given, and the annexed are copies of all the proceedings and pleadings of said cause, and that the bill of particulars fail to show any account or claim against this plaintiff, and that judgment was fraudulently obtained and rendered against the said plaintiff without any proof or evidence of any description whatever.

" And the said plaintiff further shows and avers that he was not indebted to the said Eaton at the time of the commencement of said suit, or at any other time in any sum whatever, and never to his knowledge or belief did he have any business transactions with him, and that the said defendant did not at the commencement of said suit have any claim whatever against said plaintiff, and if the said justice had required evidence previous to rendering said judgment as he was required by law to do, no judgment could or would have been obtained, and plaintiff claims that said judgment was obtained by fraud and imposition upon said justice, and is illegal, unjust and oppressive, and unless the plaintiff can ob-

tain relief in equity as against said judgment he will be wholly remediless.

"And the plaintiff further shows that the said Eaton has caused an execution to be issued upon said judgment by said justice, and that the same is now in the hands of the sheriff of the county of Columbia, and he is about enforcing the same by levy and sale of the plaintiff's property situated in said county, &c."

The defendant Eaton answered, admitting the commencement and prosecution of the suit before the justice mentioned in the complaint, and judgment therein as stated; but denies that the claim was unfounded, or that the judgment was obtained by fraud and unfair means, or without any evidence before the justice; and after denying the material allegations of the complaint, goes on to set out the cause of action in said suit before justice Pettibone, as follows:

"On the 8th day of October, A. D. 1850, this defendant and one Samuel Ring, were engaged in the mercantile business, at the town of Lodi, in the said county of Columbia, as copartners, under the firm and style of Eaton & Ring; and on that day purchased of Messrs. Wisner & Phillips, of the city of New York, a bill of merchandise, amounting to the sum of six hundred and eighty-three dollars and twelve cents; and this defendant, in consideration thereof, on the same day, executed and delivered to the said Wisner & Phillips a promissory note of the said Eaton & Ring, for the said sum of six hundred and eighty-three dollars and twelve cents, payable to the order of said Wisner & Phillips, four months after the date thereof, which said note this defendant and the said Ring were unable to pay at the maturity thereof, and the same was sent by Wisner & Phillips to the said plaintiff for collection; that said plaintiff received the said note, and applied to this defendant for payment of the same; that prior to the time of the said plaintiff's receiving the said note from

the said Wisner & Phillips for collection, as aforesaid, this defendant and the said Ring had dissolved co-partnership, which had previously existed between them, and the defendant had undertaken to pay off the indebtedness of the said firm of Eaton & Ring; that this defendant, as he was able, paid the said plaintiff, from time to time, various sums of money to be applied upon said note, and which was so applied thereon, until the 19th day of April, 1852, when the amount of balance due upon said note was reduced to the sum of four hundred and four dollars; on which last mentioned day, this defendant made, executed and delivered to the said plaintiff three promissory notes, with warrants of attorney for confessing judgment upon the same, for the said sum or balance of four hundred and four dollars, so due on said note to Wisner & Phillips, each of which said three promissory notes were made payable to the said Wisner & Phillips, or order, at Wright's drug store, in Madison, with interest at seven per cent., and with current rates of exchange on New York; one of which said notes was for the sum of one hundred and four dollars, payable one month after date, another for the sum of one hundred dollars, payable two months after date, and the other for the sum of two hundred dollars, payable three months after date; which said three promissory notes and warrants of attorney were given to said plaintiff as collateral security for the payment of the said note of the said Eaton & Ring to the said Wisner & Phillips, and for which said three promissory notes the plaintiff gave this defendant a written receipt, in which it was specified that he had received the same as such collateral security.

"And this defendant further says, that on the 13th day of May, 1852, he paid the said plaintiff the sum of seventy-five dollars and sixty-eight cents, and on the 14th day of June, 1852, the sum of twenty-five dollars, which the plaintiff indorsed

upon the said note for the sum of one hundred and four dollars; that on the fifteenth day of July, 1852, he paid to said plaintiff the further sum of thirty-five dollars, which said plaintiff indorsed upon the said note for the sum of one hundred dollars; that afterwards, on the 1st day of November, 1852, the said plaintiff undertook to enter up and docket, or cause to be entered up and docketed, in the county court for the county of Dane, aforesaid, a judgment against this defendant upon the said three promissory notes, by confession, for the sum of two hundred and eighty-two dollars and ninety-five cents, damages, and fourteen dollars and sixty-two cents costs of suit, in favor of the aforesaid Wisner & Phillips, plaintiffs, and against this defendant as defendant therein, but which said supposed judgment or proceedings this defendant is advised, believes and charges is and was absolutely null and void, for the reason that no record thereof was ever made and signed by the judge of said county court, or a court commissioner of said county, as required by the statute in such case made and provided.

"That afterwards execution was issued on said judgments, and the property of the defendant sold thereon, the proceeds of which amounted to the sum of $227.45, but that the plaintiff endorsed upon said execution or notes only the said sum less $73.65, but that he appropriated the last mentioned sum to the payment of attorney's fees and extra expenses in the collection of the same.

"That after deducting the amount collected by the sheriff on said execution, there was due on said supposed judgment on the 17th day of December, 1852, the sum of $72.43.

"That the said plaintiff afterwards, on the 24th day of March, 1853, caused a suit to be instituted against this defendant, and the said Samuel Ring, upon the said note originally given by Eaton & Ring to said Wisner & Phillips, before said H. R. Pettibone, Esq., then being a justice of the peace in and for

said county of Columbia, by process of summons returnable before the said Pettibone, at his office in the city of Portage, on the 4th day of April, 1853, which summons was served upon this defendant by leaving a copy thereof at his place of residence in the town of Lodi, in said county of Columbia, on the 25th day of March, 1853; this defendant being at that time absent from home, and in the county of Adams, over one hundred miles from his place of residence; and that on the said 4th day of April, 1853, or some day thereafter in said month of April, the said Wisner & Phillips obtained a judgment against this defendant upon said note for the sum of one hundred dollars, damages and costs of suit; this defendant at the time of the rendition of said judgment, and for more than one month afterwards, being absent as aforesaid, and having had no knowledge or information of said judgment until after the same was obtained, and having no opportunity to defend against the said cause.

"And this defendant further says, that afterwards his real estate in said county of Columbia, was levied upon and sold to satisfy said last mentioned judgment, and that he has since the sale thereof fully paid and satisfied said last mentioned judgment, and all costs and charges upon the same.

"And this defendant says that on the said 29th day of January, 1857, there was justly and fairly due to him from the said plaintiff the said sum of seventy-three dollars and sixty-five cents, which was so collected and received by him upon said supposed judgment in said Dane county court, and by him appropriated as aforesaid, and not applied upon said note of said Eaton & Ring, together with the legal interest accruing upon the same from the said 17th day of December, A. D. 1852; for the recovery of which said sum and the interest thereon he instituted said suit and recovered the said judgment against said plaintiff, as stated in said complaint, and that at the time of the commencement of said suit and the

recovery of said judgment against the said plaintiff, he was, in fact, indebted to this defendant in a greater sum than the amount for which said judgment was recovered."

The answer then denies that the judgment was obtained without evidence before the justice, but avers that it was 1endered upon legal evidence, written and parol, &c., &c.

On the trial, it appeared from the transcript of the justice, that in the suit before him the declaration was upon the common money counts, with a bill of particulars, claiming $73.65, being the excess with interest, collected by said Wright on the judgment and execution, over and above the indebtedness of Eaton & Ring to Wisner & Philips, with interest and legal costs. It further appeared in evidence that the plaintiff did not appear before the justice, nor any one in his behalf; that the sum of $73.65, the alleged excess for which the suit was brought, and on which judgment was rendered, had been received by Wright as the agent of Wisner & Phillips and appropriated to the payment of their attorney and other expenses outside of the legal costs and disbursements, and had accounted to them for the same; that Wright had instigated the prosecution, and directed the management of all the suits against the defendant and Eaton & Ring, acting as the agent of Wisner & Phillips. There was no proof of specific fraud. Wright, on being served with the summons, wrote to Dixon & Prentiss, who had been retained on the other side, and took no further personal concern in the matter, but soon after left the state. From the admission of the parties on computation, it appeared that the amount of the judgment before the justice, was the excess so collected as aforesaid, and by him applied and paid over as aforesaid·

*Abbott & Clark*, for appellant.

This is an action brought by the respondent in the circuit court of Dane county, to restrain the collection of a judgment

Wright vs. Eaton.

before a justice of the peace of Columbia county, in favor of the appellant, and against the respondent.

There are *two* grounds relied on by the respondent for relief in this suit:

1. A charge that the judgment was obtained by fraud; and,

2. That the justice rendered the judgment without proper evidence.

In answer to the first, the appellant shows that there are no specific, fraudulent acts charged upon the appellant, in the complaint. There is nothing but the general charge that the judgment was obtained by fraud.

All fraud is distinctly and positively denied by the answer. There is *no* evidence of any fraud, nor any fraudulent or even unfair circumstances connected with the trial or judgment before the justice. Fraud will never be presumed, but must, where denied, be positively proved. Willard's Eq., 148.

As to the second point, upon which the respondent relies, the appellant answers: That this is not the proper method of reviewing the decisions of inferior courts. Equity will relieve in plain cases of *fraud, accident* or *mistake,* but in this case there is neither. *Fraud* is defined to be " any kind of artifice by which another is deceived." Willard's Eq., 147. " Where there is neither accident nor mistake, misrepresentation nor fraud, equity affords no relief to a party on the ground that he has lost his remedy at law through ignorance of a fact, the knowledge of which might have been obtained by due diligence and inquiry." Willard's Eq., p. 70; *Taylor vs. Fleet,* 4 Barb., 95; *Duffree vs. Thompson,* id., 298; *Perry vs. Martin,* 4 J. Ch. R., 566; *Dodge vs. Strong,* 2 J. Ch. R., 228; *Murray vs. Graham,* 6 Paige, 622.

" The general rule is, that equity will not relieve against a judgment at law, on the ground of its being contrary to equity &c. If a party will suffer a judgment to pass against him by neglect, he cannot have relief in equity for a matter of which

he might have availed himself at law." Willard's Eq., p 351; *Lansing vs. Eddy,* 1 J. Ch. R., 51; *Le Guin vs. Gouverneur & Kemble,* 1 J. Cas.

Suppose a plaintiff should recover a verdict for a debt which had been paid, it would be manifestly inequitable that he should enjoy the fruits of his recovery. Still, even in such a case, equity could not relieve, unless the plaintiff knew the fact to be otherwise, and the defendant was ignorant of it at the trial." Willard's Eq., p. 351. *Williams vs. Lee,* 3 Atk., 223; *Gainesborough vs. Gifford,* 2 P. Williams, 424; *Smith vs. Lowry,* 1 J. Ch. R., 320.

There being neither fraud, accident, or mistake in this case, the circuit court could not, neither can this court, in this manner, look into the proceedings of the justice for the purpose of deciding upon the regularity or irregularity of such proceedings, or of the judgment which followed. Where there is no proof of *corruption,* however much the justice may err in judgment, no relief can be had in this kind of proceeding. *Todd vs. Barlow,* 2 J. Ch. R., 551.

*Orton & Hopkins,* for the respondent.

After arguing several preliminary objections, which are not material to be stated, made the following points:

1. Courts of equity have the power to relieve a party from a judgment obtained against him at law, either on the ground of fraud, accident, or mistake. Willard's Eq., 161, 164, 353; *Gainesborough vs. Gifford,* 2 P. Williams, 424: *Marine Ins. Co. vs. Hodgson,* 7 Cranch., 332; Story's Equity Jurisprudence, §§ 885, 887; *Jarvis vs. Chandler,* 1 Myln & Russ., 319; *Turly vs. Wagner,* 4 How. S. C. Rep., 142; *Ocean Ins. Co. vs. Field,* 2 Story R., 59; *Emmerson vs. Adell,* 13 Vt., 477; Eden on Injunctions, chap. 2, p. 3, 4. Chief Justice Marshall, in the case in 7 Cranch, says, " that as a court of equity is capable of imposing its own terms on the party to whom it grants

relief, there may be cases in which its relief ought to be extended to a person who might have defended himself at law. Such cases, however, do not frequently occur. *The equity of the applicant must be free from doubt.* The judgment must be one which it would be against conscience for the person to enforce." And the same doctrine is laid down by the Master of Rolls, in 2 P. Williams, above cited; and the rule is well condensed and stated by Story, 885.

2. A court of equity is not limited in its power to grant relief, to particular cases or facts. Its jurisdiction to restrain proceedings at law, and to release parties from judgments against them, is not restricted by any absolute or arbitrary rule, but depends upon the facts of each particular case, and is exercised when it would be against *conscience* to allow a party to enforce a judgment obtained at law. Willard's Eq., 147.

3. And a party invoking the aid of the court should establish: 1. That the judgment was obtained when no cause of action or claim existed. 2. That the party obtained it through fraud or imposition upon the court or party, or, 3. That the party intended to defend the suit, and was prevented by fraud of the party, or accident or mistake, from doing it; and, in general, that he had used reasonable and ordinary diligence to defend.

But however, the court might, on the ground that no cause of action existed, interpose and arrest proceedings, when the time of appeal had expired, and the party had no other redress. 7 Cranch, above cited.

In this case there was not a shadow of a claim. The pleadings and bill of particulars show that the party had no claim. (The original has the certificate of Justice, that it is a copy of the bill of particulars.) And the whole evidence shows that there was not a reasonable pretence of a claim against Wright. He was but the agent of Wisner & Phillips,

and if he had received as the agent, more money than they were entitled to, he was not liable, but Remington's evidence shows that he did not receive any more for them than they were entitled to.

Again, the bill charges that the judgment was obtained by fraud and imposition upon the justice. He swears that no witnesses were sworn before him, and that he arrived at that amount by examining some papers, and those papers were left in *Prentice's* office, and cannot be found. He was *imposed* upon, and rendered the judgment without any evidence. Gross fraud must have been practiced upon him by the party, and a judgment obtained through such means ought not to be enforced. The case is entirely different from the case of Baldwin and Merrit, 6 Wis. Here there is no cause of action, and not even the form of a trial, and fraud upon the court and law.

4. The plaintiff was not guilty of negligence in not defending, and he is therefore entitled to relief on the ground of accident or mistake. He was sued on the eve of leaving the State, and he immediately wrote to employ Dixon & Prentice to defend for him, and they happened to have been employed by the other party previously. They did not *write to him*, however, but handed his letter to Pulling & Doty and requested them to attend to it, and through a misunderstanding between Dixon and Doty, Doty did not appear and the judgment was obtained by default.

*By the Court*, SMITH, J. This was an action commenced by the respondent against the appellant, in the circuit court of Dane county to enjoin and restrain the collection of a certain judgment rendered by a justice of the peace in the county of Columbia.

The principles of law and of equity involved in this action have been fully considered in this court. In the case of *Merrit vs. Baldwin*, 6 Wis. Rep., 439, the authorities upon cases and questions of this nature were fully consulted, and their purport fully considered.

Again at this present term we have had occasion to review them, not only in the present case, but in that of *Huebschman vs. Baker*, the opinion in which is to be filed at this term, and to which reference is also made.

But perhaps it may be well to give utterance to a principle distinguishing this case from the others named, inasmuch as it does present a marked difference in one very essential respect, which we shall now proceed to notice as it is presented in the brief of the counsel for the complainant in the court below, and the respondent here, viz:

" The party invoking the aid of the court (of equity under the old practice) to restrain, enjoin or set aside a judgment at law, should establish:

1. " That the judgment was obtained when no cause of action or claim existed.

2. " That the party obtained it through fraud or imposition upon the court or party: or

3. " That the party intended to defend the suit and was prevented by fraud of the party, or accident or mistake from doing it: and in general that he had used reasonable and ordinary diligence to defend."

In this case it was conceded, and rightly conceded as a matter of equitable cognizance, that the party seeking to have a judgment enjoined must show by his complaint, that the judgment itself was inequitable, and that no substantial cause of action existed whereon the same could be based. For it is obvious that a court of equity will not interfere to set aside or enjoin a judgment at law for mere irregularity, or unless it was clearly apparent to the court, from the pleadings and

proofs, that the judgment was contrary to equity and good conscience.

Taking this case therefore upon the conceded principles which are to govern it, we do not perceive how the judgment rendered in this case can be disturbed. We are arrested at the very threshold of our inquiry, by the unanswerable objection to our interference, that it by no means appears that the judgment obtained by Eaton against Wright was unjust, or at least inequitable in the proper sense of that term. On the contrary, a review of the facts in the case we apprehend would go far to establish a contrary conclusion. The fact that the complainant obtained this money (for which the judgment sought to be enjoined, was rendered) as an agent, if wrongfully obtained, cannot absolve him from his liability to the person from whom it was thus wrongfully obtained, although he had paid it over to his principal. Story on Agency, §§ 308, 309; *Lane vs. Cotton,* 12 Mad. Rep. 488; *Richardson vs. Kimball,* 28 Maine R. 464; Story on Agency, § 311, 312, 313, *et seq.* and authorities cited.

In the case of Huebschman decided at this present term, the facts of the case, undisputed, showed most conclusively that there was not the remotest cause of action against him He positively disproved any and every conceivable fact that would go to sustain an action against him personally.

Judgment reversed.