Van Buren vs. Downing.

## VAN BUREN vs. DOWNING.

*(1) Peddler's License Law of 1870, unconstitutional.   (2) Presumption that officer did his duty.   (3) Liability of public officer for moneys collected in good faith, pursuant to a statute afterwards held invalid.*

1. Under the decision of the supreme court of the United States in *Welton v. Missouri*, 91 U. S., 275, it must be held that ch. 72 of 1870 (concerning hawkers and peddlers), previous to its amendment by ch. 395 of 1876, was invalid as in conflict with the constitution of the United States; and that persons traveling in this state for the purpose of selling articles manufactured in other states were not liable to pay the license provided for in that act.

2. Where the trial court finds that a traveling salesman paid the sum demanded of him for a license to an assistant treasury agent, and that afterwards a license was tendered to him by such agent, which he refused, it will be *presumed*, in the absence of proof to the contrary, that such license was issued by the secretary of state, and that the latter withheld it until the fees were paid, as the law required him to do.

3. Defendant, an assistant treasury agent, charged with the duty of enforcing payment of license fees, demanded of plaintiff payment of such fees in pursuance of a statute which had not then been adjudged invalid. Plaintiff asked for time to obtain the money, but the agent refused to grant it, and threatened to seize the plaintiff's property for the fees, if not paid that day; and thereupon plaintiff paid them, and they were afterwards paid into the state treasury as the statute required. Plaintiff did not deny his liability to pay the fees, nor inform defendant at any time that he should bring suit to recover back the amount; and defendant acted in good faith, in the discharge of what he believed to be his official duty. *Held*, that no action will lie against defendant to recover the money. *Wright v. Eaton*, 7 Wis., 595, distinguished.

APPEAL from the Circuit Court for *Dane* County.

Action commenced before a justice of the peace to recover eighty dollars, which, it is alleged in the complaint, was unlawfully demanded, collected and received by the defendant from the plaintiff. Answer,. "that the money was due the state on. license under ch. 72, Laws of 1870; that the defendant was a special treasury agent; and that the money was paid to him as such, and by him to the state treasury; and further, that the same was paid voluntarily."

The plaintiff recovered before the justice, and the defendant appealed to the circuit court, where the cause was tried without a jury. The findings of the circuit court are as follows:

On June 5, 1875, the plaintiff was, and for two years previous thereto had been, engaged in the business of traveling from place to place and exposing for sale and selling Singer's Sewing Machines; and he traveled as aforesaid for two years immediately preceding the said 5th of June, 1875, with a vehicle drawn by two horses, and had procured no license therefor. On the day last named, defendant was a special treasury agent, duly appointed and acting under ch. 177 of the general laws of 1872, and, in the discharge of his duties as such agent, he demanded, at Boscobel, Wisconsin, on that day, the sum of $80.50 of the plaintiff, stating to the plaintiff that he (defendant), as special treasury agent, was authorized to collect such sum as license moneys for two years. The plaintiff asked for several days' time in which to obtain the money; but, on the defendant's statement that unless payment should be made on that day, he (defendant) would seize his property, plaintiff paid defendant the sum of $80.50, and took from defendant a receipt therefor. Plaintiff, at the same time, and upon the statement that unless payment was made on that day defendant would seize his property, made application for a license to travel with two horses as a peddler, which said application was duly filed in the office of the secretary of

state. Defendant duly paid the moneys so received by him to the treasury agent of Wisconsin, and the same were afterwards duly paid into the treasury of the state of Wisconsin by said treasury agent, and no part of the same was retained by the defendant."

As conclusions of law, the court held that plaintiff was not entitled to recover in this action, and that defendant was entitled to a judgment for a dismissal of said action, with costs.

It was proven at the trial that plaintiff was acting as agent for the Singer Sewing Machine Co., and was selling the machines of that company. The judge certifies in the bill of exceptions, that his minutes do not show that it was formally stated where such company is located, and he has no recollection whether or not any testimony was given on the subject; but that it was not disputed at the trial that it is a foreign corporation, or claimed that it is a corporation of Wisconsin.

From a judgment in defendant's favor, the plaintiff appealed.

For the appellant, briefs were filed signed by *Cottrill & Cary*, and the cause was argued orally by *Mr. Cottrill:*

1. Ch. 72 of 1870 was unconstitutional. *Welton v. Missouri*, 91 U. S., 275. 2. Plaintiff may recover all moneys exacted from him under color of a void law. *Hearsey v. Pruyn*, 7 Johns., 179; *Elliott v. Swartwout*, 10 Pet., 150, and cases cited in the opinion, especially at p. 156; *Cary v. Curtis*, 3 How., 236; *Erskine v. Van Arsdale*, 15 Wall., 75; 1 Parsons on Con. (3d ed.), 67. The fact that defendant, as an agent, paid over to his principal the money wrongfully obtained, does not absolve him from liability. *Wright v. Eaton*, 7 Wis., 595. But there is no sufficient evidence that the money was ever paid into the state treasury. 3. The receipt given the plaintiff is for $80.50 for license as a peddler for eleven months. He traveled with two horses, and, if liable at all, was only liable to pay $40 for the current year. Ch. 72 of 1870, sec. 3. If that act had been valid, and the plaintiff

had violated it, he might have rendered himself liable to prosecution, but defendant had no right to collect from him a license fee for the preceding year.

*Burr W. Jones*, for the respondent:

1. The payment was made voluntarily, without protest, under no duress, by one having full knowledge of all the facts. Plaintiff paid what he supposed to be a lawful debt to the state; and the statement of the defendant that he intended to seize the plaintiff's property, had no other effect than to hasten the payment, against which plaintiff made no objection. Defendant could not have seized the property upon any final process, or deprived plaintiff of his day in court. *Forbes v. Appleton*, 5 Cush., 115; 7 id., 125; *Cook v. Boston*, 9 Allen, 393; *Cunningham v. Boston*, 15 Gray, 468; *Mayor v. Lefferman*, 4 Gill, 425. 2. There should have been proof of a demand for the money paid by plaintiff, or of notice to defendant not to pay it over, and that action would be brought to recover it. Defendant was acting as agent and trustee, and, having been guilty of no breach of trust, and having no knowledge that the payment was claimed to be illegal, he was entitled to such demand or notice, especially as the receipt given to plaintiff notified him that the money was to be paid into the state treasury. *Ford v. Brownell*, 13 Minn., 184; *Meek v. McClure*, 49 Cal., 624. 3. Defendant acted only as the agent of the state, and paid the money received by him into the state treasury before this action was commenced. He had no discretion to retain the money to await the result of litigation; but the law imperatively required him to pay over to the state treasury *all* moneys collected by him. Under these circumstances, even if the payment had not been voluntary, this action ought not to be sustained. *Cary v. Curtis*, 3 How., 236; *Sadler v. Evans*, 4 Burr., 1986; *McDonald v. Napier*, 14 Ga., 89; *Dickins v. Jones*, 6 Yerg., 483; *La Farge v. Kneeland*, 7 Cow., 456; *Matheson v. Mazomanie*, 20 Wis., 191.

In reply, appellant's counsel contended that the payment was not voluntary, having been made under threat of seizure of plaintiff's property (sec. 15, ch. 72 of 1870); and to the point that the money could be recovered when so paid, he cited *Cartwright v. Rowley*, 2 Esp., 723; *B. & S. Glass Co. v. Boston*, 4 Met., 181; *Preston v. Boston*, 12 Pick., 7; and criticised the cases cited for the respondent as either inaccurate or inapplicable. He further argued that the moneys collected under the peddler act are merely a tax (see brief of plaintiff in error in *Morrill v. The State*, 38 Wis., 428), and that there is no difference between payment of moneys illegally demanded by a tax collector armed with an ordinary tax warrant, and a similar payment to a treasury agent armed with authority to seize and detain property.

LYON, J. In *Morrill v. The State*, 38 Wis., 428, we held that ch. 72, Laws of 1870, was not in conflict with any provision of the state or federal constitution, and especially that it was not a regulation of inter-state commerce, but was purely a police regulation, which the legislature had power to enact. Hence we sustained a conviction of the plaintiff in error, an agent of the Singer Sewing Machine Co., for a violation of its provisions in the execution of his employment. It was proved in that case, and will be assumed in the present case, that such company is a corporation of another state.

When the decision was announced, we were not aware of the fact that, but a short time before, the supreme court of the United States had held, in *Welton v. The State of Missouri*, since reported in 91 U. S., 275, that a statute of Missouri "discriminating in favor of goods, wares and merchandise which are the growth, product or manufacture of the state, and against those which are the growth, product or manufacture of other states or countries, in the conditions upon which their sale can be made by traveling dealers," is in conflict with the power vested in congress to regulate commerce with for-

eign nations and among the several states; and further, that the non-exercise by congress of the power to regulate commerce among the several states is equivalent to a declaration by that body that such commerce shall be free from any restrictions.

Our statute has been amended with the design of obviating the defects therein disclosed by the decision in *Welton v. Missouri* (Laws of 1876, ch. 395); but as the statute stood when the defendant collected the license fees of the plaintiff, it made the same discrimination in favor of certain residents of the state as did the Missouri statute, by authorizing such residents to deal as hawkers and peddlers, without license, in their own work or production manufactured or grown in this state.

*Welton v. Missouri* furnishes an authoritative construction by a competent tribunal of a provision of the federal constitution, by which we hold ourselves bound. Hence we must hold that ch. 72, Laws of 1870, before the amendment, was invalid, and that the plaintiff was not legally liable to pay the license fees exacted by the defendant.

But it is claimed on behalf of the defendant, that it does not necessarily follow that the plaintiff must recover of the defendant the amount of such license fees. It is said that the payment was made voluntarily, that is, it was not made under protest, and no notice was given to the defendant that the plaintiff would bring suit to recover back the fees thus paid; and that the money was paid into the state treasury before the action was brought; and upon these facts it is claimed that the defendant is not liable.

We think the findings of fact by the court are sustained by the evidence. It is claimed on behalf of the plaintiff, that it does not appear that the license fees were paid into the state treasury. It was proved that in June, 1875, the sum of $80.50 was paid into the state treasury as license fees on account of "—— Van Burn," and that afterwards the defendant tendered to the plaintiff a license, but the latter did not

accept it; also that the defendant paid the fees collected of the plaintiff to his superior officer, the treasury agent. It is fair to presume that the license so tendered was issued by the secretary of state, and that he did not issue it until he had the proper evidence that the license fees had been duly paid into the treasury. In other words, it must be presumed, in the absence of proof to the contrary, that the secretary complied with the statute (Laws of 1872, ch. 177, sec. 2), and withheld the license until the fees were so paid.

Moreover, we have little doubt that the " —— Van Burn " above mentioned, and the plaintiff, are one and the same person. The similarity of surname and the agreement of date and amount go far to establish this hypothesis.

We have then this state of facts: The defendant, being the assistant treasury agent, charged with the duty of enforcing the payment of license fees, demanded of the plaintiff the payment of such fees by virtue of a statute which had not then been adjudged invalid, and which, if valid, rendered the plaintiff liable therefor. The plaintiff asked for time in which to obtain the money, but the defendant refused to grant it, and threatened to seize the plaintiff's property for the fees unless they were paid on that day (see sec. 15, act of 1870), and thereupon the plaintiff paid the same, and the money thus collected was paid into the treasury of the state as the statute required.

There is no evidence that the plaintiff denied his liability to pay the fees, or that he informed the defendant at any time that he should bring suit to recover back the amount thus paid; and it cannot be doubted that the defendant acted in perfect good faith, and in the honest performance of what he believed to be his duty as a public officer.

We are to determine whether, under these circumstances, the defendant is liable in this action. We think this question is answered in the negative by the cases cited by the learned counsel for the plaintiff to sustain the opposite view. *Elliott*

Van Buren vs. Downing.

*v. Swartwout*, 10 Pet., 137, was an action against the collector of customs to recover back an excess of duties paid to him by the plaintiff. The case went to the supreme court on a certificate of the disagreement of the judges of the circuit court, and the following is one of the questions certified: "Whether the collector is personally liable in an action to recover back an excess of duties paid to him as collector, and by him in the regular or ordinary course of his duty paid into the treasury of the United States; he, the collector, acting in good faith and under instructions from the treasury department; and no protest being made at the time of payment, or notice not to pay the money over, or of intention to sue to recover back the amount, given him?" On this question the court, by THOMPSON, J., says: "The case put in the second point is where the collector has received the money in the ordinary and regular course of his duty, and has paid it over into the treasury, and no objection made at the time of payment, or at any time before the money was paid over to the United States. The manner in which the question is here put, presents the case of a purely voluntary payment, without objection or notice not to pay over the money, or any declaration made to the collector of an intention to prosecute him to recover back the money. It is therefore to be considered as a voluntary payment, by mutual mistake of law; and, in such case, no action will lie to recover back the money. The construction of the law is open to both parties, and each is presumed to know it. * * To make the collector answerable, after he had paid over the money without any intimation having been given that the duty was not legally charged, cannot be sustained upon any sound principles of policy or of law. There can be no hardship in requiring the party to give notice to the collector that he considers the duty claimed illegal, and put him on his guard by requiring him not to pay over the money." And many English cases are cited in the opinion in support of the doctrine thus asserted.

VOL. XLI. — 9

*Cary v. Curtis*, 3 How., 236, was also an action against a collector of customs to recover back money illegally exacted for duties. But in that case the money was paid under written protest. The court fully and unanimously affirmed the doctrine asserted in *Elliott v. Swartwout*, and a majority of the court (Justices STORY and McLEAN dissenting) held that since the passage of the act of congress of March 3, 1839, ch. 82, sec. 2, which required collectors of the customs to place to the credit of the treasurer of the United States all money which they should receive for uncertain duties paid under protest, an action of assumpsit for money had and received would not lie against the collector for the return of such duties so received by him.

In *Erskine v. Van Arsdale*, 15 Wall., 75, under subsequent legislation by congress, which we understand restores the right of action against the collector in such cases, it was held that "taxes illegally assessed and paid may always be recovered back if the collector understands from the payer that the taxes are regarded as illegal, and that suit will be instituted to compel the refunding of them."

The law is thus stated by SPENCER, J., in *Hearsey v. Pruyn*, 7 Johns., 179: "An action may be sustained against an agent who has received money to which the principal had no right, if the agent has had notice not to pay it over; and in some cases the action has been sustained where no notice was given, *if it appears that the money has not actually been paid over.*"

We are also referred to 1 Parsons on Contracts, book 1, ch. 3, sec. 12 (6th ed., p. 78); but the authority is not in point. The general doctrine there enunciated is, "that where money is paid to one as agent, to which another as principal has color of right, the right of the principal cannot be tried in an action brought by the party paying the money against the agent as for money had and received to the use of such party; but such action should be brought against the principal."

*Cartwright v. Rowley*, 2 Esp., 725, and *Preston v. Boston*,

12 Pick., 7, were actions against the principals, and no question of the liability of an agent receiving money for his principal and paying it over to him is involved in either case. Were this an action against the state to recover back the license fees illegally collected of the plaintiff, *Preston v. Boston*, might be in point on the question whether the plaintiff paid such fees under duress of his goods.

But we think that question is not material here, for we have found no case which holds that mere duress of goods without protest or denial of liability or notice of intention to bring suit to recover back the money exacted, is sufficient ground to sustain an action against an agent to recover back such money after the agent has paid it over to his principal in good faith. The strongest cases in that direction which have come to our notice, are *Ripley v. Gelston*, 9 Johns., 201, and *Frye v. Lockwood*, 4 Cow., 454. In the former case it was held that a collector of customs was liable for duties illegally exacted by him, although he had paid the same over to the United States, when the money was extorted as a condition for granting a clearance, and was not paid with the intent or purpose that the collector should pass it to the credit of the United States. In *Frye v. Lockwood* it was held that an action could be maintained against one who had aided an assistant marshal in wrongfully collecting a fine of the plaintiff under pretense that it was a court-martial fine, although the money had been paid over to the marshal, it having been proved on the trial that the defendant had no interest in the defense, but that it was conducted by the marshal or secretary of war. Between those cases and the present case the difference is obvious. Here there was a mere threat of seizure in case the fees were not paid on that day, but there was no protest or claim that the fees were not lawfully due, or notice not to pay over the money or that suit would be brought to recover it back; and it was paid with the intent and purpose that it should be paid into the state treasury.

The doctrine of *Elliott v. Swartwout, supra*, is also assert-
ed in many of the cases cited by the learned counsel for the
defendant, some of which are referred to above.

The only case cited on behalf of the plaintiff, not above con-
sidered, is that of *Wright v. Eaton*, 7 Wis., 595, which,
briefly stated, is as follows:  Wright was the agent of a firm
in New York to collect a note against Eaton held by the firm.
Wright collected the note of Eaton, and exacted from him a
sum in excess of the amount of the note, which sum Wright
applied for the benefit of his principals.  Eaton sued Wright
before a justice of the peace for such excess, and recovered
judgment against him therefor by default.  The time allowed
by statute in which to appeal having expired before Wright
learned of the judgment, he brought suit against Eaton in
equity to enjoin the collection thereof.  The answer of Eaton
avers (and such was probably the fact) that a portion of the
note was collected by a sale of his property on execution, and
that Wright failed to allow him the whole amount of the pro-
ceeds of the sale properly applicable to the payment of the
note, and by another sale of his property again collected the
sum which ought to have been allowed, but was not, on the
first sale.  That sum equals the judgment which Eaton re-
covered against Wright, and which the latter sought by his
action to have annulled.

Mr. Justice SMITH, who delivered the opinion of the court,
after stating the rule to be that a court of equity will not en-
join the collection of a judgment unless it appears that the
same is contrary to equity and good conscience, and is not
based on any substantial cause of action, proceeded to say that
" it by no means appears that the judgment obtained by Eaton
against Wright was unjust, or at least inequitable, in the
proper sense of that term.  On the contrary, a review of the
facts in the case, we apprehend, would go far to establish a
contrary conclusion.  The fact that the claimant obtained this
money (for which the judgment sought to be enjoined was

rendered) as an agent, if wrongfully obtained, cannot absolve him from his liability to the person from whom it was thus wrongfully obtained, although he had paid it over to his principal. Story on Agency, §§ 308, 309; *Lane v. Cotton*, 12 Mod., 488; *Richardson v. Kimball*, 28 Me., 464; Story on Agency, §§ 311, 312, 313 et seq., and authorities cited."

In that case no general rule is laid down in respect to the liability of agents in a case like this. The court only held that under the facts of that case Eaton's judgment against Wright was not inequitable, even though Wright had paid over the money for which he was sued, to his principals, before Eaton brought his action. We do not question the soundness of that decision. Wright knew that he was forcing a double collection of Eaton without right or authority to do so. He was guilty of a misfeasance or willful, positive wrong, by which Eaton was injured; and all of the authorities agree that in such a case the liability of the agent to the injured party is absolute. He cannot shield himself from such liability by delivering to his principal the fruits of his wrong. The case was decided upon that ground, as a reference to the authorities cited by Mr. Justice SMITH abundantly shows.

In the present case, however, the defendant collected the license fees in good faith, and both parties acted under a mutual mistake of law.

We conclude that the judgment of the circuit court should be affirmed.

*By the Court.* — Judgment affirmed.