# Illinois Official Reports

## Supreme Court

---

*Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349

---

| | |
|---|---|
| Caption in Supreme Court: | CHRISTOPHER J. PERRY *et al.*, Appellants, v. THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION, Appellee.—INSTITUTE FOR JUSTICE, Appellant, v. THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION, Appellee. |
| Docket Nos. | 122349, 122411 cons. |
| Filed | May 24, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Rodolfo Garcia and the Hon. Rita M. Novak, Judges, presiding. |
| Judgment | No. 122349, Reversed. |
| | No. 122411, Reversed and remanded with directions. |
| Counsel on Appeal | Jeffery J. Lula, Haris Hadzimuratovic, Kyle L. Voils, and Brendan E. Ryan, of Kirkland & Ellis LLP, of Chicago, for appellant Institute for Justice. |
| | Gregory F. Ladle, of John L. Ladle, P.C., of Chicago, for appellants Christopher J. Perry and Perry & Associates, LLC. |
| | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Aaron T. Dozeman, Assistant Attorney General, of Chicago, of counsel), for appellee. |

Jeffrey M. Schwab, Jacob H. Huebert, and James J. McQuaid, of Liberty Justice Center, of Chicago, for *amici curiae* Illinois Policy Institute *et al.*

Andrew D. Prins (*pro hac vice*), Elana Nightingale Dawson, and Genevieve P. Hoffman (*pro hac vice*), of Latham & Watkins LLP, of Washington, D.C., for *amicus curiae* Reporters Committee for Freedom of the Press.

Isaac Rabicoff and Kenneth Matuszewski, of Rabicoff Law LLC, of Chicago, for *amici curiae* American Civil Liberties Union of Illinois *et al.*

Justices

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1 In separate cases, both plaintiff-appellants, (1) Christopher J. Perry and Perry & Associates, LLC (collectively, Perry), and (2) the Institute for Justice (Institute), filed causes of action under section 11 of the Illinois Freedom of Information Act (FOIA) (5 ILCS 140/11 (West 2012)) seeking the disclosure of certain information from the Department of Financial and Professional Regulation (Department). After the circuit court denied in part and granted in part Perry's motion for summary judgment, section 2105-117 of the Department of Professional Regulation Law took effect, which, if applicable, would exempt the type of information sought by Perry from disclosure. Pub. Act 99-227 (eff. Aug. 3, 2015) (adding 20 ILCS 2105/2105-117). Both Perry and the Department moved for reconsideration, and the circuit court applied section 2105-117 to the action, concluding that the information Perry sought was exempt from disclosure. The circuit court denied Perry's motion to reconsider, and the appellate court affirmed. *Perry v. Department of Financial & Professional Regulation*, 2017 IL App (1st) 161780, ¶ 48.

¶ 2 During the pendency of the Institute's lawsuit in the circuit court, Public Act 98-911 became effective on January 1, 2015, adding section 4-24 to the Barber, Cosmetology, Esthetics, Hair Braiding, and Nail Technology Act of 1985 (Barber Act), which, if applicable, would exempt the type of information sought by the Institute from disclosure. Pub Act. 98-911 (eff. Jan. 1, 2015) (adding 225 ILCS 410/4-24). After the circuit court granted the Institute's motion for summary judgment and denied the Department's motion for summary judgment, concluding in part that section 4-24 could not be applied to the Institute's action, the

Department appealed. The appellate court reversed. *Institute for Justice v. Department of Financial & Professional Regulation*, 2017 IL App (1st) 162141-U, ¶ 29.

¶ 3 We allowed Perry's and the Institute's petitions for leave to appeal (Ill. S. Ct. R. 315 (eff. Nov. 1, 2017)), which have been consolidated to determine whether section 2105-117 and section 4-24 are to apply to Perry's and the Institute's pending causes of actions, respectively. We allowed the following parties to file *amicus curiae* briefs: the American Civil Liberties Union of Illinois, the Better Government Association, the Chicago Appleseed Fund for Justice, the Chicago Council of Lawyers, the Citizen Advocacy Center, and the Illinois Press Association; the Reporters Committee for Freedom of the Press; and the Illinois Policy Institute and Edgar County Watchdogs.

¶ 4                                    BACKGROUND
¶ 5                    Perry's Request for Review and Circuit Court Proceedings
¶ 6 On January 21, 2013, Perry filed a FOIA request with the Department seeking disclosure of a complaint that had been made against his structural engineer's license. The Department denied his request on January 23, 2013. Perry sought review of the Department's denial by the Public Access Counselor (PAC). See 5 ILCS 140/9.5(a) (West 2012) ("A person whose request to inspect or copy a public record is denied by a public body, except the General Assembly and committees, commissions, and agencies thereof, may file a request for review with the Public Access Counselor established in the Office of the Attorney General."). In a nonbinding opinion letter, the PAC concluded that Perry's request was properly denied under section 7(1)(d)(iv) of the Illinois FOIA because disclosure of the complaint would "unavoidably disclose the identity of a confidential source, confidential information furnished only by the confidential source, or persons who file complaints with or provide information to administrative, investigative, law enforcement, or penal agencies." 5 ILCS 140/7(1)(d)(iv) (West 2014).

¶ 7 Perry amended the FOIA request on August 26, 2013, requesting that the Department disclose the complaint "redacted to exclude proper names and 'confidential information' " pursuant to section 7(1) of the FOIA. See 5 ILCS 140/7 (West 2012) ("When a request is made to inspect or copy a public record that contains information that is exempt from disclosure under this Section, but also contains information that is not exempt from disclosure, the public body may elect to redact the information that is exempt."). The Department denied the amended request.

¶ 8 On November 6, 2014, Perry filed an action against the Department in the Cook County circuit court. Pursuant to section 11(d), Perry requested the circuit court to order the Department to produce the redacted complaint. 5 ILCS 140/11(d) (West 2014) ("The circuit court shall have the jurisdiction to enjoin the public body from withholding public records and to order the production of any public records improperly withheld from the person seeking access."). Pursuant to sections 11(i) and (j), respectively, Perry also sought an award of attorney fees and the imposition of a civil penalty for the Department's willful and bad-faith failure to comply with the Illinois FOIA. See 5 ILCS 140/11(i), (j) (West 2014).

¶ 9 Perry moved for summary judgment. Alternatively, Perry sought an *in camera* inspection of the complaint by the circuit court. 5 ILCS 140/11(f) (West 2014). A hearing was held on July 27, 2015. After an *in camera* inspection, the circuit court concluded that, pursuant to

section 7(1)(d)(iv), the complaint was exempt from disclosure but that two of the complaint's exhibits could be disclosed, as they had already been made available to third parties. Thus, Perry's motion for summary judgment was granted in part and denied in part. Both Perry and the Department moved for reconsideration, with Perry arguing that the court should have ordered the disclosure of the complaint with redaction of any names that would have revealed the complainant's identity and the Department contesting the disclosure of the exhibits because they would necessarily reveal the complainant's identity.

¶ 10    As another basis for exempting disclosure of the complaint and exhibits, regardless of redaction, the Department cited section 2105-117 of the Department of Professional Regulation Law. 20 ILCS 2105/2105-117 (West Supp. 2015). Section 2105-117 took effect on August 3, 2015, as a statutory amendment to the Department of Professional Regulation Law. Pub. Act 99-227 (eff. Aug. 3, 2015) (adding 20 ILCS 2105/2105-117). Perry asserted that section 2105-117 was inapplicable to the case, as it was not yet in effect at the time Perry made the FOIA request or at the time of the circuit court's ruling on Perry's summary judgment motion.

¶ 11    On January 7, 2016, at a hearing on the motions to reconsider, the circuit court observed that section 2105-117 had become effective about one week after its initial ruling on Perry's summary judgment motion and that it therefore could not have applied section 2105-117 when ruling on the motion. The circuit court also noted, however, that due to the parties' motions for reconsideration, it had retained jurisdiction over the case. As such, the circuit court determined that, per *Kalven v. City of Chicago*, 2014 IL App (1st) 121846, it was required to apply section 2105-117, the current law in effect, when ruling on the motions for reconsideration. Because under section 2105-117 Perry would not be entitled to disclosure of the redacted complaint or exhibits, the circuit court granted the Department's motion for reconsideration and dismissed Perry's cause of action.

¶ 12    Perry filed a motion to reconsider, arguing that the circuit court erred in applying section 2105-117 and failing to specifically address Perry's claims for attorney fees and a civil penalty against the Department. The circuit court denied Perry's motion to reconsider, reaffirmed its dismissal of Perry's FOIA action, dismissed Perry's claim for attorney fees under section 11(i) because Perry was not the prevailing party, and dismissed Perry's claim for a civil penalty.

¶ 13              The Institute's Request for Review and Circuit Court Proceedings

¶ 14    On September 12, 2013, the Institute filed a request pursuant to the Illinois FOIA (5 ILCS 140/1 *et seq.* (West 2012)) seeking the disclosure of "[a]ll complaints regarding licensed cosmetologists and hair braiders received by the [Barber, Cosmetology, Esthetics, Hair Braiding, and Nail Technology Board] from 2011 to present." The Department denied the request on September 30, 2013, asserting that six separate FOIA exceptions exempted the requested records from disclosure. On November 22, 2013, the Institute filed a request for review of the denial with the PAC. See 5 ILCS 140/9.5(a) (West 2012) ("A person whose request to inspect or copy a public record is denied by a public body, except the General Assembly and committees, commissions, and agencies thereof, may file a request for review with the Public Access Counselor established in the Office of the Attorney General."). For over a year, the Institute's request remained pending with the PAC without resolution.

Pursuant to section 11, the Institute filed a complaint in the Cook County circuit court. See 5 ILCS 140/11 (West 2012).

¶ 15 During the pendency of the lawsuit in the circuit court, Public Act 98-911 became effective on January 1, 2015. Pub. Act 98-911 (eff. Jan. 1, 2015) (adding 225 ILCS 410/4-24). Relevant here, the law added section 4-24 to the Barber Act, providing that complaints against licensees on file with the Department are "for the confidential use of the Department and shall not be disclosed" except to law enforcement officials, other regulatory agencies, or pursuant to subpoena. *Id.* The Department answered the Institute's complaint on March 23, 2015, and, among other asserted reasons, added as an affirmative defense that the recent enactment of section 4-24 exempted the requested documents from disclosure.

¶ 16 The Institute and the Department filed cross-motions for summary judgment. The circuit court granted the Institute's motion for summary judgment on November 12, 2015, denied the Department's cross-motion for summary judgment, and continued the matter for presentation of a formal order and to resolve miscellaneous issues.

¶ 17 On December 16, 2015, the circuit court issued an order, explaining that it found inapplicable the six FOIA exemptions claimed by the Department, that section 4-24 did not apply to the Institute's request because section 4-24 was enacted after the Institute's FOIA request, and that section 4-24 did not apply retroactively. On June 30, 2016, the court ordered the Department to produce the requested records by December 23, 2016, and awarded the Institute $35,000 in attorney fees and costs as the prevailing party. See 5 ILCS 140/11(i) (West 2012) ("If a person seeking the right to inspect or receive a copy of a public record prevails in a proceeding under this Section, the court shall award such person reasonable attorneys' fees and costs."). In a separate order, the court denied the Department's motion for a stay of the production order. The Department appealed the orders separately, which were consolidated on appeal by the appellate court.

¶ 18 The appellate court granted the Department's motion for a stay of the production order pending appeal.

¶ 19 Appellate Court Analysis

¶ 20 In his appeal, Perry argued that the circuit court erred in applying section 2105-117 of the Department of Professional Regulation Law retroactively to his FOIA action. Citing *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), and section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2014)), Perry asserted that, because it is a substantive amendment and its application would have a retroactive impact on him by impairing his rights to examine the complaint and exhibits, section 2105-117 may not be retroactively applied.

¶ 21 In its appeal, the Department argued only that section 4-24 of the Barber Act applied to the Institute's request. The Institute asserted that, because section 4-24 contained no express provision regarding its temporal reach and because it is a substantive amendment that "redefines confidentiality protections and information availability," its application would have a retroactive impact upon the Institute.

¶ 22 The appellate court majority's analysis and reasoning was similar for both cases. See *Perry*, 2017 IL App (1st) 161780 (Delort, J., dissenting); *Institute for Justice*, 2017 IL App (1st) 162141 (Delort, J. dissenting). The appellate majority explained, in both decisions:

"*Kalven*, [2014 IL App (1st) 121846,] *Center for Biological Diversity* [*v. United States Department of Agriculture*, 626 F.3d 1113 (9th Cir. 2010)], and *Wisniewski* [*v. Kownacki*, 221 Ill. 2d 453 (2006),] compel the conclusion that when a statutory amendment only affects the present or future disclosure of information (either by allowing for its disclosure or exempting it from disclosure) and does not otherwise impair anyone's rights with respect to completed transactions made in reliance on the prior law, the application of the amendment has no impermissible retroactive effect, and therefore, the amendment must be applied by the court if it is in effect at the time of the court's decision." *Perry*, 2017 IL App (1st) 161780, ¶ 40.

See also *Institute for Justice*, 2017 IL App (1st) 162141-U, ¶ 22.

¶ 23    Regarding Perry's case, the appellate majority stated that:

"as section 2105-117 of the [Department of Professional Regulation Law] only exempts the complaint and exhibits requested by the plaintiffs from present or future disclosure, and does not otherwise impair plaintiffs' rights with respect to any completed transactions made in reliance on any prior law, its application has no impermissible retroactive effect. Therefore, the court properly applied section 2105-117 when ruling on the reconsideration motions and dismissing plaintiffs' FOIA request." *Perry*, 2017 IL App (1st) 161780, ¶ 41.

¶ 24    The appellate majority rejected Perry's claim that the circuit court erred in dismissing Perry's claim for attorney fees under section 11(i) because section 11(i) only allows recovery of attorney fees when " 'a person seeking the right to inspect or receive a copy of a public record prevails in a proceeding' " under section 11. (Emphasis omitted.) *Id.* ¶ 46 (quoting 5 ILCS 140/11(i) (West 2014)). Because Perry did not prevail in the FOIA proceeding, the appellate majority held that the circuit court did not err in dismissing the claim for attorney fees. *Id.* The appellate majority also rejected Perry's assertion that the matter should be remanded for a hearing on the application of civil penalties against the Department under section 11(j). The appellate majority determined that Perry had forfeited review of this issue by failing to make an adequate argument regarding the imposition of civil penalties under section 11(j).

¶ 25    As to the Institute's case, the appellate majority stated:

"[a]s section 4-24 of the Barber Act only exempts the requested records from disclosure, and does not otherwise impair the Institute's rights with respect to any completed transaction made in reliance on any prior law, its application has no impermissible retroactive effect. Therefore, the circuit court should have applied section 4-24, which was in effect at the time of its ruling, and exempted the requested records from disclosure. Accordingly, we reverse the November 12, 2015, order granting the Institute's motion for summary judgment, and the June 30, 2016, order requiring the Department to produce the subject records and awarding the Institute $35,000 in attorney fees as a prevailing requestor." *Institute for Justice*, 2017 IL App (1st) 162141-U, ¶ 23.

¶ 26    Citing *Kalven*, 2014 IL App (1st) 121846, ¶ 10, the appellate majority explained that, as to both cases, its holding was bolstered since Perry and the Institute had sought "injunctive relief, which is a prospective form of relief for which the circuit court must apply the law in effect at

the time of its decision." *Perry*, 2017 IL App (1st) 161780, ¶ 42; *Institute for Justice*, 2017 IL App (1st) 162141-U, ¶ 24.

The appellate majority also rejected both Perry's and the Institute's arguments that this court's decision in *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, compelled a different result. Further, unlike in *J.T. Einoder, Inc.*, the application of section 2105-117 in Perry's case and the application of section 4-24 in the Institute's case "affect[ ] present or future disclosure of information and which do[ ] *not* impose any new liability on past conduct" and thus have "no impermissible retroactive effect." (Emphasis in original.) *Perry*, 2017 IL App (1st) 161780, ¶ 45; *Institute for Justice*, 2017 IL App (1st) 162141-U, ¶ 28.

Separately, Perry and the Institute petitioned for leave to appeal to this court. Ill. S. Ct. R. 315 (eff. Mar. 15, 2016). We granted leave to appeal and consolidated the matters for review.

ANALYSIS

We must decide whether section 2105-117 of the Department of Professional Regulation Law and section 4-24 of the Barber Act apply to Perry's and the Institute's requests for information, respectively. 20 ILCS 2105/2105-117 (West Supp. 2015); 225 ILCS 410/4-24 (West 2016). First, however, we must determine the proper governing analysis. The standard of review is *de novo*, as this appeal presents an issue of statutory construction and also because it arises from a summary judgment order. See *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 404 (2009). "Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 93 (2010).

Section 2105-117 provides:

"Confidentiality. All information collected by the Department in the course of an examination or investigation of a licensee, registrant, or applicant, including, but not limited to, any complaint against a licensee or registrant filed with the Department and information collected to investigate any such complaint, shall be maintained for the confidential use of the Department and shall not be disclosed. The Department may not disclose the information to anyone other than law enforcement officials, other regulatory agencies that have an appropriate regulatory interest as determined by the Director, or a party presenting a lawful subpoena to the Department. Information and documents disclosed to a federal, State, county, or local law enforcement agency shall not be disclosed by the agency for any purpose to any other agency or person. A formal complaint filed against a licensee or registrant by the Department or any order issued by the Department against a licensee, registrant, or applicant shall be a public record, except as otherwise prohibited by law." 20 ILCS 2105/2105-117 (West Supp. 2015).

Section 4-24 provides:

"Confidentiality. All information collected by the Department in the course of an examination or investigation of a licensee or applicant, including, but not limited to, any complaint against a licensee filed with the Department and information collected to investigate any such complaint, shall be maintained for the confidential use of the Department and shall not be disclosed. The Department may not disclose the

- 7 -

information to anyone other than law enforcement officials, other regulatory agencies that have an appropriate regulatory interest as determined by the Secretary, or a party presenting a lawful subpoena to the Department. Information and documents disclosed to a federal, State, county, or local law enforcement agency shall not be disclosed by the agency for any purpose to any other agency or person. A formal complaint filed against a licensee by the Department or any order issued by the Department against a licensee or applicant shall be a public record, except as otherwise prohibited by law." 225 ILCS 410/4-24 (West 2016).

¶ 33    Prior to the effective dates of both sections 2105-117 and 4-24, certain information collected by the Department could properly be sought and disclosed. No one contends otherwise. Both Perry and the Institute filed their respective Illinois FOIA causes of action prior to the effective dates of both sections. Thus, both Perry's and the Institute's cases were pending at the time sections 2105-117 and 4-24 went into effect. If sections 2105-117 and 4-24 are held to apply to Perry's and the Institute's pending causes of actions, then under section 7(1)(a) of the Illinois FOIA, the information sought would be exempt. See 5 ILCS 140/7(1)(a) (West 2016) ("Information specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law."). By way of background, section 1 of the Illinois FOIA provides, in part:

"The General Assembly hereby declares that it is the public policy of the State of Illinois that access by all persons to public records promotes the transparency and accountability of public bodies at all levels of government. It is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act.

* * *

*** This Act shall be construed to require disclosure of requested information as expediently and efficiently as possible and adherence to the deadlines established in this Act." 5 ILCS 140/1 (West 2016).

¶ 34    Under the Illinois FOIA, statutory exemptions are to be construed narrowly. *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 407 (1997). Additionally, "public records are presumed to be open and accessible." *Id.* "FOIA is to be given a broad construction." *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378 (1989).

¶ 35    Accordingly, we must decide whether sections 2105-117 and 4-24 apply to causes of action pending at the time of both sections' effective dates. We now turn to the parties' arguments regarding the proper analysis to employ to determine whether sections 2105-117 and 4-24 are to apply to Perry's and the Institute's causes of actions. Perry and the Institute assert that this court should simply apply its retroactivity analysis, which is summarized below. Were section 2105-117 and section 4-24 to be applied to Perry's and the Institute's cases, respectively, Perry and the Institute contend that application thereof would have a retroactive impact, which would result in inequitable consequences in contravention of *J.T. Einoder, Inc.* and strip them of their accrued causes of actions under Illinois FOIA, which they contend became vested rights, their entitlement to the requested documents and attorney fees, and their settled expectations regarding the law at the time of the requests.

¶ 36        The Department maintains that this court need not utilize a retroactivity analysis because Perry and the Institute seek declaratory and injunctive relief. According to the Department, because declaratory relief allows a court to announce the scope of a person's present right to information and injunctive relief allows it to order the public body to disclose information in the future based on present rights, the application of a statute that becomes effective during a pending FOIA action is not retroactive. A law applies if it is effective at the time the court determines, under current law, whether a public body can be ordered to disclose information in the future. Because FOIA determines present rights, not past rights, the Department maintains that there can be no vested right at issue, as prospective relief merely allows a court to declare present rights and order future compliance with those rights. Therefore, because "prospective relief is the only relief available here, the court need not engage in Illinois's modified *Landgraf* retroactivity analysis."

¶ 37        The Department explains that, "[u]nlike in the typical *Landgraf* analysis, the court is not looking back at an event and applying present law to a past moment to determine whether a right that vested should remain free from interference . . . [a]nd because it is not retrospectively assessing the legality of a past event involving a vested right, no present laws are being applied retroactively." In response to the Department's prospective relief argument, Perry and the Institute claim that they are both actually seeking retrospective relief in the form of a mandatory injunction to remedy the Department's past misconduct.

¶ 38        We begin by detailing Illinois's retroactivity jurisprudence, which parties still appear to be confused by, understandably, given its convoluted and muddled evolution. See *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 33 (2001) (describing *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 287-88 (1996), as "[r]ecognizing that the principles for determining whether a statutory amendment applies to an existing controversy on appeal ha[ve] 'not been consistently stated' "); *Kopec v. City of Elmhurst*, 193 F.3d 894, 906 (7th Cir. 1999) (Posner, C.J., dissenting) ("Illinois law on retroactivity is in a state of some muddle"); *Orlicki v. McCarthy*, 4 Ill. 2d 342, 346 (1954) (acknowledging that various Illinois decisions considered the issue of retrospectivity in the context of vested or nonvested rights, jurisdiction, whether a provision is substantive or procedural, legislative intent, by statutes of construction, or by a combination thereof).

¶ 39        In *Commonwealth Edison Co.*, this court adopted the United States Supreme Court's retroactivity analysis as set forth in *Landgraf*, 511 U.S. 244. *Commonwealth Edison Co.*, 196 Ill. 2d at 39. We adopted the *Landgraf* analysis "with its focus on legislative intent, because we believed it provided the appropriate framework for evaluating whether a new law should apply to existing controversies." *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 411 (2009). Thus, with our adoption of the *Landgraf* approach, we "switched the focus of the first step of the retroactivity analysis from 'vested rights' to legislative intent." *Id.*

¶ 40        Under step one of *Landgraf*, a court first determines whether the legislature has " 'expressly prescribed' " the temporal reach of the new law. See *Commonwealth Edison Co.*, 196 Ill. 2d at 39-40 (quoting *Landgraf*, 511 U.S at 280). If the legislature has clearly indicated the temporal reach, then such temporal reach must be given effect unless to do so would be constitutionally prohibited. *Id.* at 42-43.

¶ 41        However, in *Caveney v. Bower*, this court subsequently explained that, in light of section 4 of the Statute on Statutes, Illinois courts need not go beyond step one of the *Landgraf*

approach. 207 Ill. 2d 82, 94 (2003). Step two of *Landgraf* is triggered where the legislature's intent as to temporal reach is not clear. But, as has repeatedly been explained, if the temporal reach has not been clearly indicated within the text of the new law, then the legislature's intent as to temporal reach is provided by default in section 4. *People v. Hunter*, 2017 IL 121306, ¶¶ 21-22; *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 20; *Caveney*, 207 Ill. 2d at 100 (Freeman, J., specially concurring, joined by McMorrow, C.J., and Kilbride, J.) ("the court errs when it holds that section 4 serves as the clear expression of legislative intent that is contemplated in the first step of the *Landgraf* analysis").

¶ 42　　Moreover, where the legislature has not expressly indicated its intent as to temporal reach, "a presumption arises that the amended statute is not to be applied retroactively." *J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 34. As we noted in *Hunter*, section 4 of the Statute on Statutes was enacted in 1874 and has never been amended. 2017 IL 121306, ¶ 21; see Ill. Rev. Stat. 1874, ch. 131, § 4 (Hurd 1874). Section 4 provides:

> "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act." 5 ILCS 70/4 (West 2016).

¶ 43　　"Section 4 is a general savings clause, which this court has interpreted as meaning that procedural changes to statutes will be applied retroactively, while substantive changes are prospective only." *Howard*, 2016 IL 120729, ¶ 20 (citing *People v. Glisson*, 202 Ill. 2d 499, 506-07 (2002)). If a statutory change is procedural, then the change will apply retroactively, *i.e.*, to pending cases in the absence of a constitutional impediment to such retroactive application. *Hunter*, 2017 IL 121306, ¶ 23. As made clear in *Hunter*, section 4 of the Statute on Statutes "contemplates the existence of proceedings after the new or amended statute is effective to which the new procedure could apply." *Id.* ¶ 31; see also *People v. Zito*, 237 Ill. 434, 438 (1908) (under section 4, "what remained to be done" must conform to the mode of procedure under the new act). Conversely, if a statutory change is substantive, then the change is not to be applied retroactively. *J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 36; *Caveney*, 207 Ill. 2d at 95-96; *Glisson*, 202 Ill. 2d at 507.

¶ 44　　Thus, after determining that a change is substantive, we need not reach the issue of whether application of the substantive change would have a retroactive impact or operation. Were we to undertake this inquiry, we would essentially be engaging in step two of the *Landgraf* analysis, which this court does not utilize. See *Caveney*, 207 Ill. 2d at 95 ("Thus, for purposes of *Landgraf*'s first step, the legislature *always* will have clearly indicated the temporal reach of an

amended statute, either expressly in the new legislative enactment or by default in section 4 of the Statute on Statutes." (Emphasis in original.)).

¶ 45 To illustrate this distinction, we cite the *Landgraf* analysis:

"When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i. e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Landgraf*, 511 U.S. at 280.

¶ 46 Thus, under the *Landgraf* analysis, federal courts will engage in a retroactive impact inquiry if a statute's reach has not been expressly prescribed. *Landgraf*, 511 U.S. 244. Conversely, this court has made clear that, where our legislature has not expressly indicated the temporal reach of a change in law, we look to whether the change is procedural or substantive, at which point our focus is still upon discerning "legislative intent." *Hunter*, 2017 IL 121306, ¶ 22; *Howard*, 2016 IL 120729, ¶ 20; *J.T. Einoder, Inc.*, 2015 IL 117193, ¶¶ 31-32; *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 331-32 (2006); *Caveney*, 207 Ill. 2d at 92. If step two of *Landgraf* considers retroactive operation to discern temporal reach, a step which this court never reaches, it follows that our inquiry into legislative intent ends upon determining that a change is substantive. Before proceeding further under Illinois's retroactivity analysis, we now turn to the Department's arguments as to why a retroactivity analysis need not be applied.

¶ 47 Department's Prospective Relief Argument

¶ 48 In support of its argument that a retroactivity analysis is inapplicable where prospective relief is sought, the Department relies upon several cases. We now examine each in turn, beginning with the Illinois cases.

¶ 49 First, the Department cites *Wisniewski v. Kownacki*, 221 Ill. 2d 453 (2006). In *Wisniewski*, the plaintiff sought discovery of a defendant priest's (Kownacki) mental health and alcohol-abuse counseling records in connection with the plaintiff's lawsuit alleging in part that defendant had sexually abused him. *Id.* at 455. The church, also a defendant, objected, citing two Illinois statutes that made such records not subject to disclosure. *Id.* at 455-56. Specifically, defendants claimed that the records were privileged under the Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act) (740 ILCS 110/1 *et seq.* (West 2002)) and the Alcoholism and Other Drug Abuse and Dependency Act (Dependency Act) (20 ILCS 301/30-5 *et seq.* (West 2002)). *Wisniewski*, 211 Ill. 2d at 455-56. This court explained:

"Plaintiff argues that applying the nondisclosure provisions of the Confidentiality Act and the Dependency Act to Kownacki's preenactment treatment records would have a retroactive impact because it would impose new duties with respect to documents and transactions completed years before the statutes' enactment. We reject

this argument and conclude that the applicability of the Confidentiality Act and the Dependency Act to Kownacki's treatment records does not hinge upon a retroactivity analysis. *Disclosure, which is the act regulated by both statutes, takes place only in the present or the future*. Thus, any new duties regarding disclosure or nondisclosure would likewise be imposed only in the present or the future, not in the past. In other words, applying the nondisclosure provisions of the Confidentiality Act and the Dependency Act to preenactment treatment records and communications would not impair anyone's rights with respect to past transactions. Neither statute impacts any actions that may have taken place in the past with regard to Kownacki's records. For these reasons, we conclude that the Confidentiality Act and the Dependency Act are applicable to treatment records and communications that were created pursuant to treatment given prior to the effective dates of those statutes." (Emphasis added.) *Id.* at 462-63.

¶ 50    The Department asserts that, in *Wisniewski*, this court "faced the question of whether the future disclosure of information had any retroactive impact" and "correctly concluded that it did not." The Department also points to the italicized portion above for support that, because disclosure occurs only in the future, a retroactivity analysis is inapplicable.

¶ 51    We disagree. *Wisniewski* analyzed whether the nondisclosure provisions of the Confidentiality Act and the Dependency Act could be applied to treatment records that were *created* nearly 20 years before either act's effective date. *Id.* at 462. Moreover, both the Confidentiality Act and the Dependency Act's effective dates predated the discovery requests and filing of the lawsuit. *Id.* at 455-56, 458-59. Specifically, the Confidentiality Act became effective on January 9, 1979, and the Dependency Act became effective on July 1, 1988. *Id.* at 458-59. It was not until October 2002, after the Confidentiality Act and Dependency Act became effective, that the plaintiff filed the lawsuit and subsequently sought disclosure of the subject documents. *Id.* at 455. Thus, *Wisniewski* does not stand for the broad proposition that, in any context, disclosure of information can only occur in the present or future and therefore that a retroactivity analysis will never apply. We find *Wisniewski* distinguishable.

¶ 52    Second, the Department cites *Hayashi v. Illinois Department of Financial & Professional Regulation* as also standing for the proposition that a retroactivity analysis is inapplicable where only prospective relief is at issue. 2014 IL 116023, ¶ 25 (citing *Cox v. Hart*, 260 U.S. 427, 435 (1922) ("A statute is not made retroactive merely because it draws upon antecedent facts for its operation.")). Relevant here, at issue in *Hayashi* was section 2105-165 of the Department of Professional Regulation Law (Act) (20 ILCS 2105/2105-165 (West 2012)), which mandated the permanent revocation, without a hearing, of the license of a health care worker who had been convicted of specific criminal offenses. *Hayashi*, 161023, ¶ 8. After the Act went into effect, the Department sent notices to the three plaintiffs, whose cases were consolidated for review, informing each that the Department intended to revoke their licenses pursuant to the Act because each had been convicted of one of the specified crimes. *Id.* ¶¶ 9, 11. Plaintiffs filed separate actions seeking injunctive relief and a judicial declaration that the Act applied only to convictions postdating the Act's effective date. *Id.* ¶ 8. Plaintiffs' licenses were revoked by administrative order. *Id.*

¶ 53    This court determined that "the plain language of the Act clearly indicate[d] that the legislature intended it to apply to convictions predating its effective date." *Id.* ¶ 17. Next, the

court considered plaintiffs' argument that, even if they fell "within the plain language of the Act based on their prior convictions, the application of section 2105-165 to them is impermissibly retroactive in violation of their substantive due process rights." *Id.* ¶ 22. We explained:

> "Applying the *Landgraf* test to the Act, we find that the legislature plainly indicated the temporal reach by stating that the license of a health care worker who has been convicted of one of the triggering offenses shall by operation of law be permanently revoked without a hearing. [Citation.] The Act provides that revocation of health care licenses pursuant to its provisions takes place only after its effective date. Thus, the Act is solely prospective and not retroactive in its operation. That being so, there is no need to turn to the alternative statutory sources suggested by plaintiffs in order to define the temporal reach of the Act. Section 4 of the Statute on Statutes [citation] controls by default only where the legislature has not clearly defined the temporal reach of a statute. [Citation.] If the legislature has clearly indicated the temporal reach of a provision, section 4 is inapplicable. [Citation.]" *Id.* ¶ 24.

¶ 54 However, despite the court's conclusion regarding the plainly indicated intent as to prospective reach, plaintiffs argued that the Act was retroactive "as applied to them because their health care licenses were revoked as a consequence of their prior convictions." *Id.* ¶ 25. Noting that the Act relied upon antecedent facts for its operation, this court explained that the Act did not apply retroactively to plaintiffs because the Act defined "new *per se* eligibility requirements with which licensees must comply in order to practice their health care professions in Illinois." *Id.* ¶ 26. Citing *Wisniewski*, this court explained that "[a]n amended statute which creates new requirements to be imposed in the present or future, and not in the past, does not have a retroactive impact on the parties." *Id.* Because the Act affected only the present and future eligibility of plaintiffs to continue to use their health care licenses, the court stated that the impact of applying the Act to plaintiffs was thus "solely prospective and not impermissibly retroactive within the meaning of the test articulated in *Landgraf*." *Id.*

¶ 55 Like *Wisniewski*, *Hayashi* does not support the Department's argument. First and foremost, *Hayashi* is distinguishable because the legislature had clearly prescribed the temporal reach of the Act, unlike in the present cases. In such cases where temporal reach is not clearly expressed, as here, the analysis is instead guided by section 4 of the Statute on Statutes. Second, *Hayashi* did not involve the issue of whether the amended statute could properly be applied to a pending cause of action. In *Hayashi*, all three plaintiffs initiated suit *after* the amendment went into effect.

¶ 56 Finally, the Department relies upon several federal cases to support its assertion that, where prospective relief is sought, a retroactivity analysis does not govern.

¶ 57 Every federal case cited by the Department involves an analysis of the second step of *Landgraf*, which Illinois courts never reach. See, *e.g.*, *Center for Biological Diversity*, 626 F.3d at 1118; *City of Chicago v. United States Department of the Treasury, Bureau of Alcohol, Tobacco & Firearms*, 423 F.3d 777, 783 (7th Cir. 2005); *Southwest Center for Biological Diversity v. United States Department of Agriculture*, 314 F.3d 1060, 1062 (9th Cir. 2002).

¶ 58 In its brief, the Department asserts that Perry and the Institute "start from the misunderstanding that a right to information vested at some point before the intervening amendments became effective." Rather, the Department starts from the misunderstanding that

- 13 -

Illinois courts will skip over section 4 of the Statute on Statutes and instead conduct a retroactive impact inquiry. See *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 536-37 (7th Cir. 2007) ("[A]n Illinois court (and consequently, a federal court applying substantive Illinois law) need never go beyond step one of the *Landgraf* test."). As previously mentioned, Illinois courts do not utilize the second step of *Landgraf*, which considers whether (1) there would be an impairment of a party's rights that such party possessed when he or she acted, (2) a party's liability for past conduct would be increased, or (3) there would be an imposition of new duties with respect to transactions already completed. *Landgraf*, 511 U.S. at 280. Nor do we look to the point in time at which the relief sought could be effectuated to determine the legislative intent as to temporal reach. In determining whether to apply a change in law to a pending cause of action, Illinois courts simply consider the legislature's intent, moving on to constitutional prohibitions only if the legislature evinces an intent for retroactive operation.

¶ 59 Although the Department does not cite *Kalven*, to the extent that the appellate majority relied upon *Kalven* for the proposition that, "[w]hen claims are prospective, a court must apply the law that is in effect at the time of its decision," the appellate majority's reliance was misplaced. See *Kalven*, 2014 IL App (1st) 121846, ¶ 10. For this proposition, the *Kalven* court cited *Bartlow v. Costigan*, 2014 IL 115152, ¶¶ 30-31, and *Forest Preserve District v. City of Aurora*, 151 Ill. 2d 90, 94-95 (1992). *Kalven*, 2014 IL App (1st) 121846, ¶ 10. However, both *Bartlow* and *City of Aurora* were addressing the context-specific issue of whether a constitutional challenge to a statute was rendered moot by amendment. See, *e.g.*, *Bartlow*, 2014 IL 115152; *City of Aurora*, 151 Ill. 2d 90. Thus *Bartlow* and *City of Aurora* are inapplicable where, as here, no constitutional challenges to the enforcement of a statute have been made and therefore mootness is not at issue.

¶ 60 Accordingly, to the extent that *Kalven* conflicts with our decision herein, it is hereby overruled. See 2014 IL App (1st) 121846, ¶ 10.

¶ 61 Vested Rights

¶ 62 We note that the parties contest whether any vested rights are at issue so as to bar retroactive application of section 2105-117 and section 4-24 to Perry's and the Institute's causes of actions, respectively. For example, the Department cites *Armstead* for the proposition that "there is no vested right in the mere continuance of a law" and that "[t]he legislature has an ongoing right to amend a statute." 171 Ill. 2d at 291.

¶ 63 Under the vested rights approach, if an amendment had no retroactive impact, a court would not apply further rules of construction to determine legislative intent. *Id.* at 290 ("a reviewing court should simply apply the law as it exists at the time of the appeal, unless doing so would interfere with a vested right"). The vested rights approach is founded upon an understanding of "true retroactivity," under which a change in law is retroactive if it "takes away or impairs the vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already past." (Internal quotation marks omitted.) *Commonwealth Edison Co.*, 196 Ill. 2d at 34 (quoting *Armstead*, 171 Ill. 2d at 290). For illustration, Black's Law Dictionary contains a selected quotation referencing "true retroactivity" under its definition of "retroactivity":

> " 'Retroactivity' is a term often used by lawyers but rarely defined. On analysis it soon becomes apparent, moreover, that it is used to cover at least two distinct concepts. The

first, which may be called 'true retroactivity,' consists in the application of a new rule of law to an act or transaction which was completed before the rule was promulgated. The second concept, which will be referred to as 'quasi-retroactivity,' occurs when a new rule of law is applied to an act or transaction in the process of completion. . . . [T]he foundation of these concepts is the distinction between completed and pending transactions . . . ." (Internal quotation marks omitted.) Black's Law Dictionary 1511-12 (10th ed. 2014) (quoting Trevor C. Hartley, *The Foundations of European Community Law* 129 (1981)).

¶ 64    Illinois courts no longer utilize a vested rights analysis to determine temporal reach. See *Commonwealth Edison Co.*, 196 Ill. 2d at 39 ("[W]e hereby adopt the approach to retroactivity set forth in *Landgraf*."). To consider whether a right has vested necessarily involves an inquiry into retroactive impact, which would contravene this court's repeated holding that we do not reach step two of *Landgraf. Hunter*, 2017 IL 121306, ¶ 21; *Howard*, 2016 IL 120729, ¶ 29. If a provision is a substantive change such that it is only to be applied prospectively, and not to a pending cause of action, it follows that a court would never consider if retroactive application thereof would have an impermissible retroactive impact upon a vested right. See *Kopec*, 193 F.3d at 906-07 (Posner, C.J., dissenting) ("the older approach of Illinois law to issues of retroactivity, an approach that may have retained some vitality despite *Armstead*," "created a presumption *** against the retroactive application of a statute that makes a substantive change")). Stated differently, a *lack* of retroactive impact in a pending case does not somehow negate or trump the legislature's intent that a change of law is to be applied to future cases only. See *Commonwealth Edison Co.*, 196 Ill. 2d at 47 (noting that, although *Henrich v. Libertyville High School*, 186 Ill. 2d 381 (1998), "was decided under the principles espoused in *Armstead*," *Henrich* remained "relevant in this case insofar as it defines those interests that are protected from legislative interference by the due process clause of the Illinois Constitution")). If, however, the legislature indicates that it wants a change of law to be applied retroactively, then a court must ask whether effectuating the legislature's intent would be constitutionally prohibited, which *in turn* would take into account vested rights, as such rights are constitutionally protected. In sum, the Department is arguing for an "impact-before-intent" analytical approach that no longer finds support in Illinois law. We now apply Illinois's retroactivity analysis.

¶ 65                                    Legislative Intent as to Temporal Reach

¶ 66    We first ask whether the legislature has clearly prescribed the temporal reach of sections 2105-117 and 4-24. Examining the plain language of both sections, we find that the legislature has not done so. To illustrate, we note that the legislature is undoubtedly aware of how to clearly indicate its intent that a statute apply to causes of action currently pending in the courts. *Lazenby*, 236 Ill. 2d at 95 ("Section 9(f) states that '[t]his Section applies to all causes of action that have accrued, will accrue, or are currently pending before a court of competent jurisdiction, including courts of review.' " (quoting 425 ILCS 25/9f (West 2004))); *Doe A.*, 234 Ill. 2d at 407 (Section 13-202.2(e) "specifically provides that the 2003 amendment applies to actions pending when the changes took effect on July 24, 2003, as well as to 'actions commenced on or after that date.' " (quoting 735 ILCS 5/13-202.2(e) (West 2006))); *Allegis Realty Investors*, 223 Ill. 2d at 333 (General Assembly expressly indicated temporal reach where new section was "specifically directed to specified Road District taxes authorized by

- 15 -

electors at annual or special township meetings during certain years prior to Public Act 94-692's enactment"); *Commonwealth Edison Co.*, 196 Ill. 2d at 42 (amendments expressly stated that the amendments' validation of taxes "applies to all cases pending on or after the effective date of this amendatory Act of 1994" and one amendment also expressly validated levies adopted "either before, on or after the effective date of [the Act]" (internal quotation marks omitted)).

¶ 67    We also presume that the legislature is fully aware of both section 4 and this court's case law. *In re Marriage of O'Neill*, 138 Ill. 2d 487, 495 (1990) ("It is a well-established principle of statutory construction that 'where terms used in [a] statute have acquired a settled meaning through judicial construction ***, they are to be understood and interpreted in the same sense theretofore attributed to them by the court ***." (quoting *People ex rel. Nelson v. Wiersema State Bank*, 361 Ill. 75, 78-79 (1935))).

¶ 68    Because the legislature has not expressly prescribed its intent as to the temporal reach of either section 2105-117 or section 4-24, we now discern the legislature's intent by examining whether sections 2105-117 and 4-24 are procedural or substantive *changes in law*. *Hunter*, 2017 IL 121306, ¶ 22; *Howard*, 2016 IL 120729, ¶ 28; *Glisson*, 202 Ill. 2d at 506-07. At the outset, we note that the Department takes no position on whether the changes made by sections 2105-117 and 4-24 are properly characterized as substantive or procedural due to its wholesale reliance upon its prospectivity argument.

¶ 69    As has previously been acknowledged by our case law, distinguishing between procedural and substantive changes can sometimes be unclear. See *People v. Atkins*, 217 Ill. 66, 71-72 (2005). "Procedural ramifications of a substantive amendment do not make the amendment procedural." *Id.* at 73. To aid our analysis, we turn to several dictionary definitions. Webster's Third New International Dictionary provides the following definitions: "procedural" is defined as "of or relating to procedure <~ details>; esp : of or relating to the procedure used by courts or other bodies (as governmental agencies) in the administration of substantive law (~ due process)" (Webster's Third New International Dictionary 1807 (2002)); "procedure," as relevant here, is defined as "an established way of conducting business (as of a deliberative body): as *** (2) : the established manner of conducting judicial business and litigation including pleading, evidence, and practice" (Webster's Third New International Dictionary 1807 (2002)); and "substantive law" is defined as "a branch of law that prescribes the rights, duties, and obligations of persons to one another as to their conduct or property and that determines when a cause of action for damages or other relief has arisen" (Webster's Third New International Dictionary 2280 (2002)).

¶ 70    Black's Law Dictionary defines "procedural law" as "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." Black's Law Dictionary 1398 (10th ed. 2014). "Substantive law" is in turn defined as "[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of the parties." Black's Law Dictionary 1658 (10th ed. 2014).

¶ 71    Because both sections 2105-117 and 4-24 alter the scope of information that is accessible, both amendments are substantive changes. The scope of accessible information necessarily determines whether a cause of action would arise or accrue under the Illinois FOIA. Certainly, sections 2105-117 and 4-24 do not speak to pleading, evidence, or steps and practice. Nor can sections 2105-117 or 4-24 be said to be changes to special remedial statutes. See *Glisson*, 202

Ill. 2d at 509 ("courts can apply retroactively statutory changes to procedural or remedial provisions"). Having determined that sections 2105-117 and 4-24 are substantive changes in law, sections 2105-117 and 4-24 may not be retroactively applied to either Perry's or the Institute's causes of actions. See *Caveney*, 207 Ill. 2d at 92. Fatally, the Department "has not directed our attention to anything in the United States or Illinois Constitution which would prohibit the law[s] from being applied" in this way. See *People v. Brown*, 225 Ill. 2d 188, 201 (2007).

¶ 72   The Department asserts that both Perry and the Institute always had and still have causes of action under section 11 of the Illinois FOIA but that sections 2105-117 and 4-24 changed Perry's and the Institute's present right to information. This argument is unpersuasive, as we have already rejected the Department's prospective relief argument. Before the effective dates of sections 2105-117 and 4-24, a party could seek and potentially obtain the type of information sought by Perry and the Institute. Today, a party would not be able to do so.

¶ 73   Briefly, we note that any concern that our holding would impermissibly order a public officer to disclose documents which the legislature has dubbed confidential and therefore exempt from disclosure under section 7 of the Illinois FOIA is baseless. See 5 ILCS 140/7(1)(a) (West 2016). Such an argument would mean that a court would have to ignore the legislature's clear intent. If the legislature has made clear that a change in law is not to apply to pending causes of action, then it follows that, in select cases, a public official is not legally constrained by a new provision.

¶ 74   In a similar vein, as to the Institute's case, the Department insinuates that, because the Institute's complaint sought disclosure of documents "from 2011 to the present," that the word "present" is still operative in the future sense. However, the circuit court already determined that the word "present" meant until December 23, 2013, ordering that "[d]efendant shall provide to Plaintiff '[a]ll complaints regarding licensed cosmetologists and hair braiders received by the Board from January 1, 2011 to December 23, 2013.' " Further, the record also reveals that the Department understood "present" to hold the same meaning. In its response to Perry's motion to establish the scope of document production, the Department contended "the scope of the FOIA request only extends from 2011 to September 12, 2013."

¶ 75   As to relief, Perry requests that the grant of summary judgment for the Department be reversed with direction to provide the documents as redacted and further that this matter be remanded for further hearings as to the application and assessment of costs as permitted under section 11(j) or other relief as this court deems just and proper. See 5 ILCS 140/11(j) (West 2016) ("If the court determines that a public body willfully and intentionally failed to comply with this Act, or otherwise acted in bad faith, the court shall also impose upon the public body a civil penalty of not less than $2,500 nor more than $5,000 for each occurrence."). We reverse the grant of summary judgment for the Department with directions that the circuit court hold a hearing to reconsider whether Perry is also entitled to disclosure of the subject complaint in a redacted form and, if Perry is the prevailing party, whether Perry is entitled to attorney fees under section 11(i). See 5 ILCS 140/11(i) (West 2016) ("If a person seeking the right to inspect or receive a copy of a public record prevails in a proceeding under this Section, the court shall award such person reasonable attorney's fees and costs.").

¶ 76   With respect to Perry's request for a hearing to be held on section 11(j) penalties, we note the Department's argument that Perry forfeited any claim for penalties and makes no argument

to this court that the appellate court's forfeiture finding was an abuse of discretion. See *Perry*, 2017 IL App (1st) 161780, ¶ 47. However, we are also mindful of the fact that the circuit court mistakenly made no finding on whether the Department willfully and intentionally violated FOIA due to its erroneous belief it need not reach the issue after concluding that Perry was not entitled to the information. Regardless, forfeiture does not serve as a jurisdictional bar to this court's ability to reach the issue. *People v. Peterson*, 2017 IL 120331, ¶ 67. Though we express no view upon whether the Department willfully and intentionally violated the Illinois FOIA, we direct the circuit court to hold a hearing on section 11(j) civil penalties, as it should have in the first instance.

¶ 77    With respect to the Institute, we reverse the appellate court's order and reinstate the circuit court's grant of summary judgment in favor of the Institute.

¶ 78                                    CONCLUSION

¶ 79    Illinois's retroactivity analysis governs where a change of law becomes effective during the pendency of a lawsuit. Because the legislature did not clearly prescribe its intent as to whether sections 2105-117 and 4-24 should be applied to pending lawsuits, we considered whether, under section 4 of the Statute on Statutes, the changes in law are procedural or substantive. As both sections 2105-117 and 4-24 are substantive changes to the law, sections 2105-117 and 4-24 are to apply prospectively only. Accordingly, as to Perry, we reverse the grant of summary judgment for the Department with directions that the circuit court hold a hearing to reconsider whether Perry is also entitled to disclosure of the subject complaint in a redacted form and, if Perry is the prevailing party, whether Perry is entitled to attorney fees under section 11(i). See 5 ILCS 140/11(i) (West 2016). We also direct the circuit court to hold a hearing on section 11(j) civil penalties. With respect to the Institute, we reverse the appellate court's order and reinstate the circuit court's grant of summary judgment in favor of the Institute.

¶ 80    No. 122349, Reversed.

¶ 81    No. 122411, Reversed and remanded with directions.