In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 19-2084

DAPHNE SMITH,

*Plaintiff-Appellant,*

*v.*

RECORDQUEST, LLC,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:19-cv-00025 — **Lynn Adelman**, *Judge.*

———————

ARGUED JANUARY 13, 2021 — DECIDED FEBRUARY 26, 2021

———————

Before FLAUM, BRENNAN, and SCUDDER, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Federal courts defer to state courts on state-law issues, but not without reservation. In this case, Daphne Smith claimed RecordQuest, LLC charged excessive fees when satisfying her request for health records. So Smith sued, alleging violation of Wisconsin's health records statute and unjust enrichment. The district court dismissed Smith's claims. Soon after, the Wisconsin Court of Appeals decided a

case in which it expressly disagreed with the district court's analysis of Smith's statutory claim.

Although we have our own views on the proper interpretation of Wisconsin's health records statute, we defer to the decision of the Wisconsin Court of Appeals in these circumstances. We reverse the district court's judgment on Smith's statutory claim but affirm on different grounds the district court's judgment on Smith's unjust enrichment claim.

## I. Background

Daphne Smith suffered an injury from a car accident in May 2014 and retained an attorney to represent her for a personal injury action.[1] As part of that representation, Smith authorized her attorney to obtain her health care information. The attorney requested Smith's medical records from Milwaukee Health Services, Inc. ("MHS"), on three different occasions between September 2014 and March 2015. But health care records company RecordQuest, LLC, not MHS, answered these requests and charged Smith's attorney (who paid on her behalf) two different fees—a $20.96 handling fee and a $8.26 certification fee—each time.

Smith later brought a class action in state court, which RecordQuest removed to federal court. Smith alleged these charged fees contravened the permissible fee schedule set out in Wis. Stat. § 146.83(3f)(b) for health care records requests and resulted in the unjust enrichment of RecordQuest.

---

[1] On a motion to dismiss, we treat all factual allegations as true and view them in the light most favorable to the plaintiff, Smith. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 332 (7th Cir. 2019).

RecordQuest moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

The district court, primarily by applying agency principles, dismissed both of Smith's claims. *Smith v. RecordQuest, LLC*, 380 F. Supp. 3d 838 (E.D. Wis. 2019). On Smith's statutory claim, the district court observed that § 146.83(3f)(b) imposes a duty upon only "health care providers." *Id.* at 842. RecordQuest is not a "health care provider" but is the agent of a health care provider, MHS. *Id.* For the district court, "no principle of agency law holds that a principal's liability is imputed to the agent when the agent performs the act that results in the principal's liability." *Id.* at 843. So the district court did not hold RecordQuest liable under § 146.83(3f)(b). *Id.* at 842–44. Even so, the district court concluded that this reasoning did not affect the liability of a principal like MHS, leaving no remedial gap for a plaintiff like Smith. *Id.* at 842, 844.

The district court also rejected Smith's reliance on Wis. Stat. §§ 146.84(1)(b) and 990.001(9). That § 146.84(1)(b) and (bm) provide a cause of action against "[a]ny person … who violates § 146.82 or 146.83" did not change that the statutory duty, and therefore the liability, always lies with the principal and not the agent. *Id.* at 844. Moreover, § 990.001(9)—"[i]f a statute requires an act to be done which may legally be done by an agent, such requirement includes all such acts when done by an authorized agent"—simply means that "the agent's acts are the principal's acts[,]" so an agent may fulfill a principal's statutory duty. *Id.* at 843–44. The district court also noted that its holding would be no different than if Smith sued an MHS billing clerk (who, like RecordQuest, is not a health care provider). *Id.* at 844.

Smith's unjust enrichment claim failed for the same rea-
sons. The district court held that any excessive fees—or, un-
just benefit—that Smith allegedly conferred to RecordQuest
belonged to MHS as RecordQuest's principal. *Id.* at 845. Even
if RecordQuest kept the excessive fees, it would be MHS who
conferred the benefit to RecordQuest because "under its
agency agreement with MHS, the fee was RecordQuest's com-
pensation for rendering records-retrieval services to MHS."
*Id.* Additionally, no inequity would result from allowing
RecordQuest to keep the excessive fees as Smith could always
sue MHS directly, according to the district court. *Id.*

Two other conclusions by the district court merit mention.
That court declined to consider RecordQuest's argument that
the statute of limitations barred Smith's statutory and unjust
enrichment claims. *Id.* at 841. And it did not *sua sponte* grant
Smith leave to amend her complaint because she had not con-
tended she could cure the legal defects in her claims. *Id.* at
845–46.

## II. Discussion

We consider (A) whether RecordQuest can, as an agent of
MHS, be liable for excessive fees under § 146.83(3f)(b); (B)
whether alleged violations of that statute form the basis for an
unjust enrichment claim against RecordQuest; and (C) if
Smith's claims are time barred.

"Our review of a district court's grant of a motion to dis-
miss for failure to state a claim is *de novo*, and we may affirm
on any basis in the record." *UWM Student Ass'n v. Lovell*, 888
F.3d 854, 859 (7th Cir. 2018).

### A.  Excessive Fees under Wis. Stat. § 146.83(3f)(b)

Wisconsin law contains detailed statutory provisions governing health care records, which require that "if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees … , the health care provider shall provide the person making the request copies of the requested records." Wis. Stat. § 146.83(3f)(a). This duty applies to twenty-six different classes of medical professionals listed in Wis. Stat. § 146.81(1). In addition, § 146.83(3f)(b) sets forth a fee schedule and prohibits health care providers from charging more than what is listed as permissible.

Under these statutes, liability arises for "[a]ny person … who violates § 146.82 or 146.83" either willfully or negligently. Wis. Stat. § 146.84(1)(b), (bm). As for damages, willful and negligent violations vary only in degree. *Compare* Wis. Stat. § 146.84(1)(b) (providing that willful violations result in "actual damages to that person, exemplary damages of not more than $25,000 and costs and reasonable actual attorney fees"), *with* Wis. Stat. § 146.84(1)(bm) (providing that negligent violations result in "actual damages to that person, exemplary damages of not more than $1,000 and costs and reasonable actual attorney fees").

Wisconsin law also codifies certain interpretive canons and rules. *See* Wis. Stat. § 990.001 ("In construing Wisconsin laws the following rules shall be observed unless construction in accordance with a rule would produce a result inconsistent with the manifest intent of the legislature … ."). One such rule, entitled "Acts by agents," states: "If a statute requires an act to be done which may legally be done by an agent, such

requirement includes all such acts when done by an authorized agent." Wis. Stat. § 990.001(9).

Smith's statutory excessive fees claim requires us to interpret these Wisconsin health care records statutes. When we sit in diversity and interpret state law, we must exercise care and caution, because "[w]hen interpreting state law, a federal court's task is to determine how the state's highest court would rule." *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011). "In the absence of guiding decisions by the state's highest court, we consult and follow the decisions of intermediate appellate courts unless there is a convincing reason to predict the state's highest court would disagree." *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012). So while a state supreme court's rule would control, a state appellate court's decision can provide controlling guidance as well. *See In re Zimmer, NexGen Knee Implant Prod. Liab. Litig.*, 884 F.3d 746, 751 (7th Cir. 2018). At bottom, "we must interpret the law as we think Wisconsin's courts would." *Winebow, Inc. v. Capitol-Husting Co. Inc.*, 867 F.3d 862, 868 (7th Cir. 2017), *certified question answered and remanded*, 2018 WI 60, 381 Wis. 2d 732.

The Wisconsin Supreme Court has not addressed liability for health care records companies or third parties under § 146.83(3f)(b), but the Wisconsin Court of Appeals has done so. In *Townsend v. ChartSwap, LLC*, that appeals court expressly disagreed with the district court's analysis in this case. 2020 WI App 79, ¶¶ 11–12 (Wis. Ct. App. 2020) (citing and distinguishing the district court decision in *Smith*, 380 F. Supp. 3d at 844), *petition for cert. filed*, 2019AP2034 (Dec. 16, 2020). To the appeals court, the district court's decision "not only undermines the underlying purpose of Wis. Stat.

§ 146.83(3f)(b), which is to protect patients from being charged excessive fees for access to information … , but it also misinterprets WIS. STAT. § 990.001(9) because the statute does not specifically deal with the imputation of liability." *Id.* at 835. The appeals court concluded that "agents of health care providers have no greater power to charge fees in excess of those permitted by § 146.83(3f)(b) than the providers themselves." *Id.* Fearing a gap in the remedial scheme, the appeals court held that ChartSwap, a health care records company like RecordQuest, fell within § 146.83(3f)(b) as an agent of Milwaukee Radiologists, a health care provider like MHS. *Id.* at 736. On appeal, Smith urges us to follow *ChartSwap*, and RecordQuest asks us to disregard it.

Given that we are to "consult and follow the decisions of intermediate appellate courts[,]" *ADT Sec. Servs., Inc.*, 672 F.3d at 498, we defer here to *ChartSwap*. But we do so with pause. The district court here offered sound points rejecting liability for health care records companies under § 146.83(3f)(b), some of which we echo.

In *ChartSwap*, the appeals court's view of statutory purpose superseded the statutory text. *See* 2020 WI App 79, ¶ 14 ("To allow a third-party to circumvent the statutory limitation on health care providers simply because it does not provide actual health care services would defeat the purpose of Wis. Stat. § 146.83(3f)(b) … ."); *but cf. Mohamad v. Palestinian Auth.*, 566 U.S. 459, 460 (2012) ("[P]etitioners' purposive argument simply cannot overcome the force of the plain text."). Under the text of the health records statute, RecordQuest is not a health care provider. *Cf.* Wis. Stat. § 146.81(1) (listing twenty-six definitions for health care providers). And the text of § 146.83(3f)(b) imposes no duty upon agents of health care

providers. *Cf. State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 663 (noting that the Wisconsin Supreme Court has "repeatedly held that statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry'") (quoting *Seider v. O'Connell*, 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 232). The district court's emphasis on the text of § 146.83(3f)(b) here is persuasive.

The *ChartSwap* decision also unduly fears a loophole in the statutory remedy. Smith could have sued MHS directly, closing any supposed gap in the remedial scheme that would result from the district court's interpretation. *See* RESTATEMENT (THIRD) OF AGENCY § 7.03(1) (2006) ("A principal is subject to direct liability to a third party harmed by an agent's conduct when … the agent acts with actual authority or the principal ratifies the agent's conduct and … the agent's conduct, if that of the principal, would subject the principal to tort liability[.]"). Again, the district court's reasoning here is sound.[2]

We also interpret Wis. Stat. § 990.001(9) differently than the appeals court did in *ChartSwap*. The Wisconsin Court of Appeals read § 990.001(9) as "codif[ying] the general rule of agency law, which is that if a statute requires a certain action, that requirement applies equally to a principal's agents." *ChartSwap*, 2020 WI App 79, ¶ 13. But like the district court, we read that interpretive rule—"[i]f a statute requires an act to be done which may legally be done by an agent, such

---

[2] Open questions, such as whether Wisconsin courts treat violations of Wis. Stat. § 146.83(3f)(b) as torts, or whether a principal's delegation of duty would allow it to avoid vicarious liability, provide even more reason for us to defer in a case like this.

requirement includes all such acts when done by an author-ized agent"—to mean what it says: An agent may fulfill a principal's statutory duty because the agent's acts are the principal's acts. The Wisconsin Court of Appeals in *ChartSwap* approvingly cited *Rosecky v. Tomaszewski,* 225 Wis. 438, 274 N.W. 259 (1937). Yet that case appears to support the plain reading of this court and the district court. *Rosecky*, 274 N.W. at 261 (noting the predecessor statute to § 990.001(9) "pro-vides that when a statute requires an act to be done which may by law as well be done by an agent as by the principal, such requisition shall be construed to include all such acts when done by an agent"). This is to say that because an agent *may* fulfill a principal's duty does not mean that the agent *must* be liable for statutory violations from that fulfillment. Any decision, state or federal, should meaningfully engage with these points.

We flag these issues, yet do not decide them, for that is the role of state courts. *Erie Railroad. v. Tompkins*, 304 U.S. 64, 78 (1938) ("[W]hether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern."). Since *Erie*'s advent, federal courts and state courts often employ different interpretive methodologies. *Compare ChartSwap*, 2020 WI App 79, ¶ 14 (noting a worry that the district court's interpretation "would defeat the purpose of Wis. Stat. § 146.83(3f)(b) in and of it-self"), *with INTL FCStone Fin. Inc. v. Jacobson*, 950 F.3d 491, 499 (7th Cir. 2020) ("Plain text trumps purpose."). This case is no exception. "But absent a conflict with the Constitution or a federal law, we cannot overturn established state precedent. The so-called '*Erie* guess' is not an *Erie* veto." *Sanchelima Int'l, Inc. v. Walker Stainless Equip. Co., LLC*, 920 F.3d 1141, 1146 (7th Cir. 2019). We may disagree with *ChartSwap*, but we cannot

convincingly say that the Wisconsin Supreme Court would do the same. *Cf. ADT Sec. Servs., Inc.*, 672 F.3d at 498. Our system of dual sovereignty is well served by a respectful dialogue between state and federal courts. But deference to state courts does not prevent us from expressing our own views on state-law issues.

We also do not conclude that certification of this question to the Wisconsin Supreme Court is the proper solution. That court may answer only certified questions "to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and *the court of appeals of this state*." Wis. Stat. § 821.01 (emphasis added). This case may not even be certifiable under Wisconsin law because *ChartSwap* is controlling precedent under Wis. Stat. § 821.01. *Cf. Sanchelima Int'l, Inc.*, 920 F.3d at 1146 (noting that SEVENTH CIR. R. 52(a), which governs certification, relies upon the certification rules of the forum state).

At this time, *ChartSwap* guides us. *Cf. Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1414 (7th Cir. 1994) (Flaum, J., dissenting) ("When this court sits in diversity, federalism requires us to enforce the substantive law of the forum state, even when we conclude we see a more enlightened path."). We therefore reverse the district court's judgment as to Smith's statutory violation out of deference to the Wisconsin Court of Appeals.

**B. Unjust Enrichment and Wis. Stat. § 146.83(3f)(b)**

In addition to her statutory claim, Smith asserts a common-law claim for unjust enrichment based on her payments to RecordQuest. Under Wisconsin law, unjust enrichment is an equitable doctrine that is "grounded on the moral principle that one who has received a benefit has a duty

to make restitution where retaining such a benefit would be unjust." *Watts v. Watts*, 137 Wis. 2d 506, 530 (1987). An unjust enrichment claim requires: "(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof." *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009) (footnote omitted) (quoting *Seegers v. Sprague*, 70 Wis. 2d 997, 1004 (1975)).

The district court dismissed Smith's unjust enrichment claim primarily because MHS, as principal, would receive any benefit given to its agent, RecordQuest. But we affirm on different grounds: Smith cannot resort to a remedy in equity (unjust enrichment) when she has a remedy at law (§ 146.83(3f)(b)). *See UWM Student Ass'n*, 888 F.3d at 859 (noting that, when reviewing a motion to dismiss, "we may affirm on any basis in the record"). In Wisconsin, a claim for unjust enrichment is typically a quasi-contractual claim that provides an equitable remedy when no legal remedy exists. *See Watts*, 137 Wis. 2d at 530 ("Because no express or implied in fact agreement exists between the parties, recovery based upon unjust enrichment is sometimes referred to as 'quasi contract,' or contract 'implied in law' rather than 'implied in fact.' Quasi contracts are obligations created by law to prevent injustice."). Indeed, "[o]ne of the firmly-established rules of equity is that where a court of law can do as full justice to the parties as can be done in equity, a court of equity will not interfere." *Kramer v. Bohlman*, 35 Wis. 2d 58, 65 (1967) (footnote omitted).

So it is here. Under § 146.83(3f)(b), Smith has a remedy at law for any "injustice" that allegedly resulted from excessive payments she made to RecordQuest. The equitable remedy that Smith seeks in unjust enrichment is derivative of, and predicated upon, that statutory claim. Put differently, Smith unjustly enriched RecordQuest only if RecordQuest violated § 146.83(3f)(b). Allowing a double recovery for these intertwined claims may itself be inequitable. We therefore affirm the district court's dismissal of Smith's claim for unjust enrichment.[3]

### C. Statute of Limitations for Wis. Stat. § 146.83(3f)(b) and Unjust Enrichment

On appeal, RecordQuest reasserts an argument that the district court declined to consider: that the two-year statute of limitations of Wis. Stat. § 893.93(2)(a) bars both Smith's statutory claim under § 146.83(3f)(b) and her unjust enrichment claim. For RecordQuest, Smith's statutory and unjust

---

[3] A later decision by this district court is also relevant. In *Harwood v. Healthcare Tech. Enabled Servs., LLC*, the court observed that *City of Sheboygan v. Finnegan*, 245 Wis. 349, 352 (1944), and *Wright v. Eaton*, 7 Wis. 595, 608 (1859), "support a different theory of liability against Change Services [a company analogous to RecordQuest]—one based on the common law of agency rather than on unjust enrichment." No. 18-C-1941, 2019 WL 10351680, at *2 (E.D. Wis. June 10, 2019). Specifically, "[i]f the health-records statute prohibited the health care providers from charging the fee, then the health care providers may not have been legally entitled to collect the fee. Thus, under cases such as *City of Sheboygan* or *Wright*, Change Services, as the agent of the health care providers, might be liable to the plaintiff for returning the fee." *Id.* We are not convinced that Wisconsin courts have recognized this specific cause of action under common law. But Smith has not pleaded it in her complaint, so we need not consider it here.

enrichment claims rise and fall together; both are time barred because § 146.83(3f)(b) results in a "statute penalty," triggering the two-year limitation period of § 893.93(2)(a). That the excessive fees allegedly occurred between September 2014 and March 2015 made Smith's November 20, 2018 complaint untimely, so RecordQuest's argument goes. According to Smith, however, Wis. Stat. § 893.93(1)(a)'s six-year statute of limitations applies to her statutory claim under § 146.83(3f)(b) as no "statute penalty" under § 893.93(2)(a) follows. Smith also contends that her unjust enrichment claim, as a quasi-contract, falls under the six-year statute of limitations for contracts under Wis. Stat. § 893.43(1).[4]

We begin with the text of the two statutes of limitations at issue. Section 893.93(1)(a) creates a catch-all six-year limitations period for "[a]n action upon a liability created by statute when a different limitation is not prescribed by law." Section 893.93(2)(a) sets a two-year limitations period for "[a]n action by a private party upon a statute penalty, or forfeiture when the action is given to the party prosecuting therefor[e] and the state, except when the statute imposing it provides a different limitation." Traditionally, Wisconsin courts have applied the two-year limitations period to actions that principally benefit the public at large (a "statute penalty"), and the six-year limitations period to actions that principally benefit the plaintiff at issue (no "statute penalty"). *E.g.*, *State ex rel. Leung v. City of Lake Geneva*, 2003 WI App 129, ¶ 6, 265 Wis. 2d 674, 679 (Wis. App. Ct. 2003) ("The Wisconsin Supreme Court has held that the two-year statute of limitations applies where the action by

---

[4] Although the Wisconsin Legislature amended the relevant portions of § 893.93 in 2018, we apply the version in effect at the time that Smith's claims first accrued in 2014 and 2015.

a private party upon a statute penalty is for the benefit of the public, while the six-year statute of limitations applies when private individuals seek private relief.").

Smith's § 146.83(3f)(b) claim is a private action for private relief, so it is timely under § 893.93(1)(a)'s six-year limitations period. Relief under § 146.83(3f)(b) entails "actual damages[,]" "exemplary damages[,]" and "costs and reasonable actual attorney fees." Wis. Stat. § 146.84(1)(b), (bm). If Smith succeeds in her suit, these remedies would principally redress her injury from the allegedly excessive fees, not any harm done to the public. This cause of action, then, concerns a private individual in Smith seeking private relief against a private defendant in RecordQuest. No "statute penalty" results. *Cf. State ex rel. Leung*, 265 Wis. at 679 ("Complaints under the open meetings law are not brought in the individual capacity of the plaintiff but on behalf of the state. Thus, an action brought under the open meetings law falls squarely under § 893.93(2)."). Although § 146.84(1)(b) and (bm) authorize "exemplary damages" (i.e., punitive damages), that authorization is not the "statute penalty" talisman that RecordQuest claims. *See Erdman v. Jovoco, Inc.*, 181 Wis. 2d 736, 762 (1994) ("Although the legislature has created an incentive for employers to comply with the statute by providing double damages, the statute is primarily intended to benefit individual employes [sic]."). What matters is who, on balance, the cause of action benefits—the private individual or the general public. Because § 146.83(3f)(b) is primarily private in nature and does not result in a "statute penalty" for the public's benefit, the six-year limitations period of § 893.93(1)(a) applies here.

Smith's unjust enrichment claim is also timely. Wisconsin law imposes a six-year statute of limitations for contract-

based claims: "[A]n action upon any contract, obligation, or liability, express or implied, including an action to recover fees for professional services, except those mentioned in § 893.40, shall be commenced within 6 years after the cause of action accrues or be barred." Wis. Stat. § 893.43(1). And as discussed, a claim for unjust enrichment is a quasi-contractual claim. Accordingly, Wisconsin courts have applied § 893.43(1)'s six-year limitations period for contract-based claims to quasi-contractual claims. *See Boldt v. State*, 101 Wis. 2d 566, 578 (1981) (holding that "a claim based on quasi-contract … was subject to the six-year statute of limitations of [§ 893.43]"). We do the same here and hold that Smith timely made her unjust enrichment claim.

Smith's final argument is that she should have been granted leave to amend her complaint to address the issues of Wisconsin agency law raised in *Harwood*, 2019 WL 10351680, at *2. But "[w]here a plaintiff does not move to amend, the district court is under no obligation to amend the complaint sua sponte." *Cleveland v. Rotman*, 297 F.3d 569, 575 (7th Cir. 2002). Because Smith did not move for leave to amend her complaint, the district court committed no error by declining to grant leave *sua sponte*.

### III.  Conclusion

This case presents an interpretive question regarding Wisconsin's health records statutes best resolved by that state's courts. Out of deference to the Wisconsin Court of Appeals in *ChartSwap*, we REVERSE the dismissal of Smith's statutory claim under § 146.83(3b)(f). For the reasons given above, we AFFIRM the dismissal of Smith's unjust enrichment claim.