In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 25-2185

REGINALD CLAY,

*Plaintiff-Appellee,*

*v.*

UNION PACIFIC RAILROAD COMPANY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:24-cv-04194 — **Georgia N. Alexakis**, *Judge.*

_____

No. 25-2761

BRANDON WILLIS,

*Plaintiff-Appellee,*

*v.*

UNIVERSAL INTERMODAL SERVICES, INC., *et al.,*

*Defendants-Appellants.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-01716 — **Elaine E. Bucklo**, *Judge.*

_____

No. 25-2762

JOHN GREGG,

*Plaintiff-Appellee,*

*v.*

CENTRAL TRANSPORT LLC,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:24-cv-01925 — **Elaine E. Bucklo**, *Judge.*

———————————

ARGUED FEBRUARY 12, 2026 — DECIDED APRIL 1, 2026

———————————

Before BRENNAN, *Chief Judge*, and HAMILTON and JACKSON-AKIWUMI, *Circuit Judges*.

BRENNAN, *Chief Judge*. In 2024, Illinois's General Assembly amended Section 20 of the Biometric Information Privacy Act, confirming that damages should be evaluated on a per-person basis. The legislature did so in response to a Supreme Court of Illinois decision, in which the court expressed concern that the old version of Section 20 might permit "annihilative liability" for businesses regulated by the Act. *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918, 928 (Ill. 2023). The question presented is whether this amendment applies retroactively to cases pending when it was enacted.

# I

## A

Illinois enacted the Biometric Information Privacy Act (BIPA or the Act) to respond to the increasing use of biometric data in commerce. *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1149 (7th Cir. 2020). BIPA codified individuals' "right to privacy in and control over their biometric identifiers and biometric information." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 621 (7th Cir. 2020) (quoting *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1206 (Ill. 2019)). The Act regulates how private entities must handle the collection, retention, and disclosure of such information. 740 ILCS 14/15.

BIPA has become a font of high-stakes litigation. *Cf. Bridges v. Blackstone, Inc.*, 66 F.4th 687, 688 (7th Cir. 2023). Five years ago, one such case came before this court. In *Cothron v. White Castle System, Inc.*, 20 F.4th 1156 (7th Cir. 2021), this court was asked to decide how claims accrue under BIPA's substantive provisions. BIPA prohibits private entities from "collect[ing]," "captur[ing]," "disclos[ing]," or "otherwise disseminat[ing]" anyone's biometric identifiers without their informed consent. 740 ILCS 14/15(b), (d). In Cothron's view, this meant her employer collected her biometric information and a new claim accrued every single time she scanned her fingerprint to access the company's computer system. *Cothron*, 20 F.4th at 1160. The defendant argued this per-scan theory of claim accrual would create "potentially crippling financial liability" for those who violate BIPA by repeatedly collecting the same information in the same way. *Id.* at 1165.

Recognizing the stakes of the case, this court certified the question of claim accrual under BIPA Sections 15(b) and (d) to

the Supreme Court of Illinois. *Id.* at 1167. That court accepted our certification request. *Cothron*, 216 N.E.3d at 921 (Ill. 2023). After concluding that the text of Section 15 is unambiguous, the court sided with the plaintiffs and held that claims accrue "with every scan or transmission" of biometric information. *Id.* at 926; *see also id.* at 922, 924–26.

Though the *Cothron* decision centered on the plain text of Section 15, another part of BIPA loomed over the case. Section 20 creates "a right of action" for plaintiffs to sue private entities that violate BIPA. 740 ILCS 14/20(a). That section also sets the damages a plaintiff can recover "for each violation," creating a choice between actual and liquidated damages— "whichever is greater." *Id.* at 20(a)(1)–(2). When a business "intentionally or recklessly violates a provision of this Act," the plaintiff can obtain $5,000 in statutory damages. *Id.* at (a)(2). A negligent violation lands plaintiffs a $1,000 damages award. *Id.* at (a)(1).

The defendant and amici in *Cothron* invoked Section 20 to dissuade the court from adopting its per-scan reading of Section 15. "[B]ecause section 20 of the Act sets forth liquidated damages that a party may recover for 'each violation,'" they argued, this approach "could potentially result in punitive and 'astronomical' damage awards." *Cothron*, 216 N.E.3d at 928 (quoting 740 ILCS 14/20(a)). The defendant noted that class-wide damages in that suit could exceed $17 billion, a result the legislature could not have intended. *Id.*

The Supreme Court of Illinois acknowledged this concern. Though BIPA leverages "the potential for significant damages awards" to ensure compliance, the court recognized that the text of Section 20 might cut against the availability of such massive monetary penalties. *Id.* at 928–29. But it still

"believe[d] that policy-based concerns about potentially excessive damage awards under the Act are best addressed by the legislature." *Id.* at 929. So, the court concluded its opinion by "respectfully suggest[ing] that the legislature review these policy concerns and make clear its intent regarding the assessment of damages under the Act." *Id.*

**B**

The Illinois General Assembly responded to the court's invitation. Less than a year and a half after the *Cothron* decision, the General Assembly passed an amendment to Section 20 clarifying the scope of damages available under BIPA. *See* Pub. Act. 103-0769, 2024 Ill. Laws 6788–89 (2024). The amendment took effect on August 2, 2024—the same day the governor signed it into law. *Id.*

This amendment added two clauses to Section 20. The first provides that any entity that collects biometric information "in more than one instance … from the same person using the same method of collection in violation of subsection (b) of Section 15 has committed a single violation of subsection (b) of Section 15 for which the aggrieved person is entitled to, at most, one recovery under this Section." 740 ILCS 14/20(b). The second adds the same operative language for violations of Section 15(d). *Id.* at 14/20(c). The legislature did not change the text of Section 15 or Section 20(a) at all, nor did it include an express retroactivity clause. *Id.*

**II**

We have consolidated three interlocutory appeals posing a common legal question—whether this amendment to BIPA Section 20 applies retroactively. Reginald Clay, a commercial truck driver, alleges that the Union Pacific Railroad violated

Section 15(b) of BIPA by requiring him to scan his fingerprints when he entered and exited the company's facilities. John Gregg and Brandon Willis each allege their employers collected their fingerprints or hand geometry through a "biometric time clock," violating BIPA Sections 15(a), (b), and (d). Though these cases come to us in different procedural postures, each district court certified this question for interlocutory review, and we granted the requests to appeal. 28 U.S.C. § 1292(b).

The financial stakes of this case are high. If the amendment does not apply, each plaintiff argues he is entitled to a substantial award of damages. Clay, for example, alleges that the Railroad collected his fingerprint scans approximately 1,500 times. If the railroad is found liable for intentional violations of the Act, that could net Clay alone $7.5 million in statutory damages. And Willis filed his case as a putative class action, leading to a risk of billions of dollars in damages.

We review the district courts' determination of this state law question de novo. *Webster v. CDI Ind., LLC*, 917 F.3d 574, 577 (7th Cir. 2019). The *Erie* doctrine dictates that the "highest court of each State, of course, remains 'the final arbiter of what is state law.'" *Montana v. Wyoming*, 563 U.S. 368, 377 n.5 (2011) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940)). "When no decision from the state supreme court squarely controls, federal courts predict how the relevant state court would rule," sometimes called an *Erie* prediction. *Giovannelli v. Walmart Inc.*, 164 F.4th 1052, 1054 (7th Cir. 2026) (citing *Smith v. RecordQuest, LLC*, 989 F.3d 513, 519 (7th Cir. 2021)). Fortunately, the Illinois law of retroactivity is well established, allowing us to predict how the Supreme Court of Illinois would rule with a high degree of confidence.

### III

For the reasons below, we hold that this amendment to BIPA Section 20 applies retroactively to cases pending at the time it was enacted.

### A

To determine whether a statute applies retroactively, Illinois courts apply a modified version of the federal test. *See Commonwealth Edison Co. v. Will Cnty. Collector*, 749 N.E.2d 964, 972 (Ill. 2001). In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court set out a two-step approach to evaluating retroactivity. But Illinois courts do not move past the first step. *Perry v. Dept. of Fin. and Prof. Reg.*, 106 N.E.3d 1016, 1026 (Ill. 2018). They consider only whether the General Assembly has expressly indicated the temporal reach of the amendment. *Id.*

The reason for this modification is that the legislature has set a default rule for the temporal reach of all statutes. If the amendment expressly states whether it applies retroactively or not, the plain text controls. *Id.* But if the amendment is silent on its temporal reach, the courts look to Section 4 of the Illinois Statute on Statutes for guidance. *Id.* Section 4 contains an express savings clause, which states that "proceedings … shall conform, so far as practicable, to the laws in force at the time of such proceeding." 5 ILCS 70/4.

As the Supreme Court of Illinois has summarized, Section 4 directs us to consider whether amendments constitute substantive or procedural changes in the law. *Perry*, 106 N.E.3d at 1027. The legislature is presumed to know about Section 4, so this background principle controls in all cases. *Id.* at 1033; *see Caveny v. Bower*, 797 N.E.2d 596, 603 (Ill. 2003).

A substantive amendment under Illinois law "prescribes the rights, duties, and obligations of persons to one another as to their conduct or property and … determines when a cause of action for damages or other relief has arisen." *Perry*, 106 N.E.3d at 1034 (citation omitted). By contrast, a procedural amendment involves the "rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." *Id.* (citation omitted). In many different contexts, "distinguishing between procedural and substantive changes can sometimes be unclear." *Id.* at 1033 (citing *People v. Atkins*, 838 N.E.2d 943, 946–47 (Ill. 2005)). Because "[p]rocedural ramifications of a substantive amendment do not make the amendment procedural" under Illinois law, courts must carefully consider the text and structure of the amendment to determine its scope. *Atkins*, 838 N.E.2d at 948.

Crucially, the Supreme Court of Illinois treats remedial changes as procedural, not substantive. Since 1999, that court has singled out remedial provisions for special treatment in four different retroactivity cases. *See Dardeen v. Heartland Manor, Inc.*, 710 N.E.2d 827, 828–29 (Ill. 1999); *People v. Glisson*, 782 N.E.2d 251, 257 (Ill. 2002); *People ex rel. Madigan v. J.T. Einoder, Inc.*, 28 N.E.3d 758, 766–67 (Ill. 2015), *Perry*, 106 N.E.3d at 1034. Illinois law has affirmed this general principle for many decades. *See Orlicki v. McCarthy*, 122 N.E.2d 513, 515–16 (Ill. 1954) (collecting cases showing that "where the change in law merely affects the remedy," the change counts as procedural and applies retroactively). This court also recognizes the rule. *See Midwest Grain Prods. of Ill., Inc. v. Productization, Inc.*, 228 F.3d 784, 792 (7th Cir. 2000) ("If a rule affects only the remedy available and not the substantive rights of the parties, it is considered procedural." (citation modified)).

And though Illinois reformulated its approach to retroactivity in 2001, *see Commonwealth Edison*, 749 N.E.2d at 972, we have found no case decided after the Supreme Court of Illinois adopted its modified *Landgraf* test that repudiates this longstanding principle.

There are limits to this carveout for remedial provisions. For one, an amendment creating a brand-new remedy—like adding mandatory injunctive relief to a statute contemplating only monetary penalties—counts as substantive. *J.T. Einoder*, 28 N.E.3d at 766–67. For another, it appears the Supreme Court of Illinois usually applies this rule in the context of amendments involving statutory or punitive damages. *See Perry*, 106 N.E.3d at 1034 (indicating that changes to "special remedial statutes" can be applied retroactively); *Glisson*, 782 N.E.2d at 257 (same); *Dardeen*, 710 N.E.2d at 832 (applying a repeal of a statutory treble damages provision retroactively).

Still, Illinois courts have consistently ruled that they "can apply retroactively statutory changes to procedural or remedial provisions, whether they are outright repeals or amendments." *Glisson*, 782 N.E.2d at 257. We take this principle as the rule of decision for this case.

**B**

The amendment to BIPA Section 20 is a remedial change. That makes it "procedural" under Illinois law, so courts should apply the amendment to cases pending at the time the statute was enacted. Both the text of the amendment and the Supreme Court of Illinois's discussion of Section 20 in *Cothron* indicate that the amendment addresses the availability of damages, not proscribed conduct. So, it should not be treated as a substantive change under Illinois law.

Start with the text and structure of the amendment. As noted above, the amendment adds two subsections to BIPA Section 20—one addressed to Section 15(b) and another to Section 15(d). In both provisions, the operative language states that a "private entity that, in more than one instance," violates the substantive BIPA provision by collecting, obtaining, or disseminating "the same biometric identifier or biometric information from the same person" using "the same method of collection … *has committed a single violation of subsection [(b) or (d)] … for which the aggrieved person is entitled to, at most, one recovery under this Section*." 740 ILCS 14/20(b) (emphasis added).

Two features of this amendment show that it is a remedial provision. First, the legislature located it in Section 20, not Section 15. It did not change Section 15 at all, even though that was the portion of BIPA interpreted in *Cothron* and the one setting substantive standards for liability under the Act. Instead, it amended the portion of the statute governing liquidated damages. The legislature also left Section 20(a), the provision creating a cause of action to sue for violations of Section 15, untouched. Second, the plain language of the amendment focuses on remedies. It indicates that an "aggrieved person is entitled to, at most, *one recovery* under this Section." 740 ILCS 14/20(b), (c) (emphasis added). In tandem, these points highlight that the amendment did not alter when "a cause of action … has arisen," nor did it change "the rights, duties, and obligations of persons to one another"—the hallmarks of substantive changes. *Perry*, 106 N.E.3d at 1034. It simply cabined the recovery available against defendants who violate the Act.

To try to show the statute makes a substantive change, plaintiffs focus on the phrase "a single violation." In their view, *Cothron* stands for the proposition that a private entity commits a "violation" of BIPA every time an individual scans his or her fingerprint in a way prohibited by Section 15(b). And an entity "violates" Section 15(d) every time it disseminates the same information. That would mean this amendment substantively changed BIPA because it transformed thousands of violations into just one, terminating millions of dollars of liability. As one oft-cited district court opinion summarized, "[T]he basic question of whether [a plaintiff] has been injured just once or injured more than a thousand times strikes the Court as a matter of substance, not of procedure." *Schwartz v. Supply Network, Inc.*, No. 1:23-cv-14319, 2024 WL 4871408, at *5 (N.D. Ill. 2024).

This argument both misreads the statute and overstates *Cothron*'s holding. Section 15 outlines the informed consent procedures private entities must follow if they want to collect, store, or distribute biometric information. It does not include the word "violation" at all. That term appears exclusively in Section 20, which provides "a right of action" for "[a]ny person aggrieved by a violation of this Act." 740 ILCS 14/20(a). And it uses the word again when outlining the damages available under the Act, saying that prevailing parties may recover liquidated damages "for each violation." *Id.*

*Cothron* did not consider the meaning of the word "violation" in Section 20; it considered only how claims accrued for purposes of Section 15. That distinction makes all the difference. The legal issue in the Seventh Circuit iteration of *Cothron* was whether the statute of limitations barred the suit. 20 F.4th at 1158–59; *see also Cothron*, 216 N.E.3d at 921. To answer that

question, Illinois law asks when relevant claims accrue—whether the first time the entity collected the biometric information, or every time it did so. *Cothron*, 20 F.4th at 1161–62. After the Supreme Court of Illinois answered the certified question, this court affirmed the district court's conclusion that Cothron's claim was not time-barred. *Cothron v. White Castle Sys., Inc.*, 79 F.4th 894, 895–96 (7th Cir. 2023).

These points indicate that *Cothron* asked a very different question than the one before us now. True, the Supreme Court of Illinois sometimes used the words "violation" and "claim" interchangeably in its opinion. *Cothron*, 216 N.E.3d at 922, 926, 927–28. But it did not purport to interpret Section 20 when it did so. It instead used these terms as synonyms as it decided whether Cothron's suit was filed on time or over a decade too late. *Id.* at 920–21; *Cothron*, 20 F.4th at 1158–59.

Further, the brief discussion of Section 20 at the end of *Cothron* supports, rather than contradicts, our reading of the statute. When addressing concerns raised by amici and the defendant about excessive damages awards under BIPA, the Supreme Court of Illinois expressed uneasiness about how Section 20 might interact with this accrual regime. *See Cothron*, 216 N.E.3d at 928–29. The court invited the legislature to "review these policy concerns and make clear its intent regarding the assessment of damages under the Act" because it was not obvious whether Section 20 mandated per-scan damages. *Id.* at 929. Unlike Section 15, Section 20 needed clarification.

Even though Section 20(a) was not before it, the court still hazarded some initial interpretations of that provision. First, it asserted that "there is no language in the Act suggesting legislative intent to authorize a damages award that would result in the financial destruction of a business." *Cothron*, 216

N.E.3d at 929. Second, it noted that the statute uses the permissive "may" as it talks about awarding damages—a "prevailing party *may* recover." *Id.* (quoting 740 ILCS 14/20(a)). Based on this word choice, the court observed, "It … appears that the General Assembly chose to make damages discretionary rather than mandatory under the Act." *Id.* Third, the court noted that a "trial court presiding over a class action—a creature of equity—would certainly possess the discretion to fashion a damage award that … included an amount designed to deter future violations, without destroying defendant's business." *Id.* (citation omitted).

The amendment to Section 20 reaffirms the point that damages appear to be discretionary under BIPA. After all, it states plaintiffs are "entitled to, at most, one recovery." 740 ILCS 14/20(b), (c). By including the qualifier "at most," the amendment indicates that plaintiffs alleging thousands of violations might not even be entitled to the full award of liquidated damages permitted by Section 20(a). This comports with the Supreme Court of Illinois's recognition that nothing in the Act authorizes destructive financial penalties—especially in the class action context. *Cothron*, 216 N.E.3d at 929; *see also Svoboda v. Amazon.com Inc.*, 168 F.4th 956, 966 (7th Cir. 2026) (emphasizing the district court's discretion to award damages on a class-wide basis).

Taken together, these points reaffirm the remedial nature of this BIPA amendment. If courts have discretion to decide whether to award damages at all, then plaintiffs were not guaranteed any specific recovery in the first place. So this amendment, which limits them to "at most, one recovery," did not alter any substantive rights or the number of injuries they sustained. It simply changed the statutory award of

damages available to plaintiffs, cabining the discretion of trial court judges when they fashion the remedy.

The best reading of BIPA Section 20 is that it covers only remedies. This amendment, then, enacted a "procedural" change under Illinois law.

## C

The plaintiffs raise three additional concerns, but none are persuasive.

To start, plaintiffs argue that remedial changes should not be construed as "procedural" amendments at all. They say this because older cases connected the rule to the "vested rights" framework of retroactivity, which the Supreme Court of Illinois has since rejected. *See Commonwealth Edison*, 749 N.E.2d at 968–72. In particular, plaintiffs dispute reliance on *Dardeen v. Heartland Manor, Inc.*, which is the most recent case applying a remedial statute retroactively. In *Dardeen*, the Supreme Court of Illinois held that an amendment repealing a treble damages provision should be applied retroactively. 710 N.E.2d at 832. The court did so because "[i]t has been well settled for over a century that, prior to judgment, a plaintiff has no vested right to a particular method of procedure or remedy such as the treble damages" statute at issue in the case. *Id.*

Still, the validity of this principle does not hinge on the vested rights approach or *Dardeen*. Both *Glisson* and *Perry* affirm the general principle that remedial changes are procedural, without citing *Dardeen*. *See Glisson*, 782 N.E.2d at 257 ("courts can apply retroactively statutory changes to procedural or remedial provisions"); *Perry*, 106 N.E.3d at 1034 (same). At the least, these cases confirm that changes to special remedial statutes can be applied retroactively. *Perry*, 106

N.E.3d at 1034 (citing *Glisson*, 782 N.E.2d at 257). Our holding that this BIPA amendment applies retroactively, then, does not hinge on whether *Dardeen* itself is good law.

We see *Dardeen* as useful authority confirming the accuracy of our *Erie* prediction. *Giovannelli*, 164 F.4th at 1055. In 2015, the Supreme Court of Illinois treated *Dardeen* as binding precedent, citing it for the "proposition that amendments affecting remedies are procedural." *J.T. Einoder*, 28 N.E.3d at 766. It did so even while applying the new *Landgraf* analysis. *See id.* at 765–67. True, the court found *Dardeen* "inapposite," holding the amendment at issue was substantive, and not "simply procedural," because it created an entirely new type of liability. *Id.* at 766. But it reaffirmed *Dardeen*'s bottom-line holding. The similarities between this case and *Dardeen*—coupled with the *J.T. Einoder* case's reiteration of its validity—confirm that our approach to interpreting this amendment is on the right track.

Further, plaintiffs argue that this amendment should be construed as substantive because it "alters the scope of liability and the legal consequences of past conduct." In one articulation of the Illinois retroactivity test, this court described substantive rules as those "concerned with directing behavior outside of the courtroom," telling regulated parties "to do certain things or abstain from certain conduct on pain of some sanction." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 537 (7th Cir. 2007). Invoking this theme, the plaintiffs contend that the amendment removed the financial incentive for companies to stop continuously flouting BIPA.

This argument leads in the wrong direction. All remedial changes affect behavior outside of the courtroom. Rational economic actors calibrate their activity by calculating the costs

and benefits of immediate compliance with the statute, along with the severity of potential liability. Taking this argument too literally would lead us to conclude that changes to statutory damages regimes are always substantive. But the Supreme Court of Illinois has long held they are procedural. In this posture, we side with the state high court's view that remedial changes are procedural. *See West*, 311 U.S. at 236 ("the highest court of the state is the final arbiter of … state law.").

Finally, plaintiffs raise the specter of state constitutional concerns. The plaintiffs are correct to note that the retroactivity analysis is not the end of the matter. As *Perry* explains, the "temporal reach" of the statute—dictated by whether the amendment is substantive or procedural—"must be given effect unless" it would be "constitutionally prohibited" to do so. 106 N.E.3d at 1026.

Nevertheless, the amendment to Section 20 of BIPA raises no constitutional concerns. Even though Illinois abandoned the "vested rights" theory for determining retroactivity, it still uses that phrase to describe certain interests "protected from legislative interference by [the Illinois] due process clause." *First of Am. Trust Co. v. Armstead*, 664 N.E.2d 36, 39 (Ill. 1996); *see also Martin v. Goodrich Corp.*, 268 N.E.3d 170, 182 (Ill. 2025). But it "has been well settled for over a century" in Illinois that "a plaintiff has no vested right to a particular … remedy." *Dardeen*, 710 N.E.2d at 832. This rule is especially applicable here, given that damages under BIPA are likely discretionary. *See Cothron*, 216 N.E.3d at 929. Moreover, this amendment decreases, rather than increases, the monetary penalties BIPA imposes on private entities. That means the defendants have not been deprived of any vested rights either. Accordingly,

there are no constitutional concerns with applying this statute retroactively.[†]

## IV

Because the amendment to Section 20 of BIPA constitutes a remedial change, Illinois courts would have us apply it to cases pending when it was enacted. A plaintiff who alleges thousands of claims under BIPA Section 15 is only "entitled to, at most, one recovery under" Section 20. We hold that this amendment applies retroactively because it impacts only the statutory damages available to plaintiffs—it does not change BIPA's substantive standards of liability.

The district courts in all three cases erred by holding otherwise. On remand, the district courts may need to reevaluate how this holding affects other aspects of these cases, including subject matter jurisdiction. But for now, it is enough to note that these courts, and others dealing with similar cases, must ensure they follow the latest guidance of the legislature when calculating damages under BIPA Section 20.

REVERSED AND REMANDED

---

[†] Though amendments to a statute presumptively change the law, Illinois courts sometimes apply statutes retroactively when they merely clarify the law. *See People v. Stewart*, 215 N.E.3d 752, 758 (Ill. 2022). Because this case is resolved under the ordinary retroactivity framework, we need not decide whether this amendment clarified the law.

This choice eliminates our need to address plaintiffs' arguments about Illinois separation of powers principles. Even if we reached this point, it would fail. *Cothron* interprets Section 15 of BIPA, whereas the amendment changed Section 20. The legislature did not overturn *Cothron*, as plaintiffs contend, because the amendment altered a different part of the statute.